**Toby GELBER, By and Through his next friend and natural father, Leo GELBER, Plaintiff,**

v.

**Dr. Jose ROZAS, etc., et al. Defendants.**

**No. 84–6078–Civ–JLK.**

United States District Court,
S.D. Florida.

May 14, 1984.

Barry Weinstein, Coral Gables, Fla., Fred Goldstein, Hollywood, Fla., for plaintiff.

Eric Taylor, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

ORDER DISMISSING CLAIMS SEVEN
AND EIGHT OF THE COMPLAINT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the court upon *sua sponte* consideration of its subject matter jurisdiction. By order of 9 March, 1984, this court established a briefing schedule on this issue. The parties have now submitted their briefs and the court has fully considered the issue of jurisdiction.

In particular, the court asked the parties to brief the question of whether the defendants' actions were under the color of state law and whether the defendants' actions have deprived the plaintiff of any rights, privileges, or immunities secured by the Constitution and laws of the United States. The parties attention was directed to *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Fundiller v. City of Cooper City,* 578 F.Supp.

303 (S.D.Fla.1984), among other cases. In *Parratt* and *Fundiller,* the United States Supreme Court and this court, respectively, held that the plaintiffs had not allowed a cause of action under 42 U.S.C. § 1983. The rationale in both cases explained that when the circumstances require quick action in furtherance of the public interest or where the circumstances make it impracticable to provide a predeprivation hearing and such circumstances are coupled with the availability of some meaningful posdeprivation remedy, that postdeprivation remedy is all that is required to satisfy the procedural due process requirements of the Fourteenth Amendment. *Parratt,* 101 S.Ct. at 1915 and *Fundiller,* 578 F.Supp. at 305.

The briefs have centered on the factual distinction between this case and *Parratt;* that being that *Parratt* involved a deprivation of property and this case involves a deprivation of liberty. However, *Parratt* expressly relied on the Court's prior decision in *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), for the proposition that a postdeprivation hearing may satisfy due process even where the deprivation is of liberty:

> At some point the benefit of an additional safeguard to the individual affected ... and to society in terms of increased assurance that the action is just, may be outweighed by the cost.

*Parratt,* 101 S.Ct. at 1916 quoting *Ingraham.* The *Ingraham* court thought that that point had been reached and ruled that corporal punishment could be administered in the public schools without a predeprivation hearing. Consequently, the factual distinction raised by the plaintiff is legally significant only to the extent that *Parratt* is persuasive, rather than binding, precedent for the issue now before this court.

However, the court does now recognize significant legal distinctions between *Parratt, Fundiller, Ingraham* and this case. In those cases, and in the one now before the bar, the main issue is what process is due an individual before the state can permanently deprive that individual of life,

liberty or property. In *Parratt, Fundiller* and *Ingraham,* exigent circumstances made it impractical to require a predeprivation hearing and the courts found that the requirement of due process could be satisfied by a postdeprivation hearing. In *Parratt,* extension of the 42 U.S.C. § 1983 umbrella to the plaintiff's case would have "almost necessarily result[ed] in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983." 101 S.Ct. 1917. The court found that result to be contrary to the intent of the framers of § 1983. In *Fundiller,* the court found that "because of the public interest in apprehending armed criminals trafficking in contraband, the postdeprivation procedure offered by the state" was all that the constitution required, 578 F.Supp. at 305. In *Ingraham,* the Court found that a predeprivation hearing would only marginally improve the safeguards against unwarranted deprivation of liberty and yet "would also entail a significant intrusion into an area of primary educational responsibility." 97 S.Ct. at 1418.

In the case now before the bar, however, the plaintiff is challenging a concious prolonged policy constructed and implemented by state officials for more than a decade. It was not clearly impossible or impractical for the state to offer some form of predeprivation hearing. And, as opposed to the situation in *Ingraham,* the deep dark reaches of a state mental facility is a long way from the openness that our school system provides. Therefore, accepting the allegations of the complaint as true for the purposes of jurisdiction, as the court must, the court finds that the plaintiff has properly alleged the deprivation of due process prong of a Fourteenth Amendment/42 U.S.C. § 1983 claim.

■ The next question then is whether all of the defendants were acting under color of state law. Several of the defendants cite the court to *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), for the proposition that their

acts were not under color of state law. These defendants would have the court analogize their medical responsibilities to their patient, Toby Gelber, with the legal responsibilities the defendant public defender owed her client in *Dodson*. In reviewing *Dodson*, the court finds that this issue will depend on the individual relationship of each defendant to their prior patient. The Court in *Dodson* distinguished its prior rulings where it had assumed that a doctor/administrator of a state facility was acting under color of state law. The Court found those prior medical defendants distinguishable from the Polk County Deputy Public Defender in that the state administrators owed a duty "to the mission that the State, through the institution, attempts to achieve." *Dodson*, 102 S.Ct. at 451. The public defender, on the other hand, not only did not owe a duty to the state's prosecutorial mission, he was duty bound to zealously oppose that mission to the extent that it conflicted with his clients, interests.

Several of the defendants now before the court argue that they owed no duty to the states mission and that their only responsibility was to Toby Gelber. They would, therefore, have the court rule that they were not acting under the color of state law and, so, that they should be dismissed from the suit. The court finds that this calls for a factual determination that should not be made at this stage of the proceedings. As the facts are developed it may become appropriate on a motion for summary judgment, or otherwise, to resolve this question in the defendants' favor. However, the plaintiff has alleged that the defendants were all working as state employees and that they deprived the plaintiff of certain rights while they were so employed. Those are sufficient allegations to maintain an action brought under 42 U.S.C. § 1983.

The plaintiff having alleged that the challenged conduct was committed by a person acting under the color of state law and that this conduct deprived the plaintiff of rights privileges or immunities secured by the Constitution or law of the United States, the court finds that the plaintiff has properly alleged this court's subject matter jurisdiction. However, the court finds that claims Seven and Eight are based on state law and must be dismissed.

■ *Pennhurst State School & Hosp. v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), explained the application of the eleventh amendment to pendent state law claims. The court explained that the well recognized doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) created the irony that a state official who was acting in violation of the federal constitution or law was acting beyond the scope of authority and, so, was stripped of his eleventh amendment immunity. This doctrine was created for the purpose of vindicating federal law. When the question involves, state law, however, the underlying reason for creating the exception to sovereign immunity is not present; federal law need not be vindicated.

The plaintiff tries to avoid this reasoning by arguing that all this action asks for is monetary relief against the individual defendants. Without deciding whether this argument would lead to a finding that the action was against the individuals only and not the state, the court finds that the plaintiff's argument is in contradiction with the express language of the complaint. The prayer of the complaint asks the court to declare the rights of the parties on the basis of state law. The court finds that such a declaration would be an uncalled for infringement of state immunity. Such a declaration would necessarily determine the rights and responsibilities of both the individual defendants and the state.

For these reasons, the court finds that it does have jurisdiction of this action. However, the court does:

ORDER and ADJUDGE that claims Seven and Eight, paragraphs 52 through 55 inclusive, of the Complaint be, and they are, DISMISSED.

DONE and ORDERED in chambers at the United States Courthouse, Miami, Dade County, Florida this 14th day of May, 1984.