**SOCIETY FOR GOOD WILL TO RE-TARDED CHILDREN, et al. Plaintiffs,**

v.

**Mario M. CUOMO, as Governor of the State of New York, et al. Defendants.**

**No. 78–CV–1847 (JBW).**

United States District Court, E.D. New York.

Jan. 27, 1987.

---

Scheinberg, Schneps, DePetris & DePetris, Riverhead, N.Y. by Michael S. Lottman, Murray B. Schneps, for plaintiffs.

Robert Abrams, Atty. Gen. of N.Y., New York City by Caren Brutten, for defendants.

Alan M. Adler, Albany, N.Y., for the Office of Mental Retardation & Developmental Disabilities.

## MEMORANDUM and ORDER

WEINSTEIN, Chief Judge.

## I. HISTORY OF PROCEEDINGS

A class action was commenced in 1978 by the Society for Good Will to Retarded Children, Inc., the parents' organization at Suffolk Developmental Center (the Center), and by thirteen mentally retarded individuals on behalf of themselves and more than 1,500 other persons then in residence at, or on the rolls of, the Center. Plaintiffs sought, on various federal constitutional and state and federal statutory grounds, (1) the improvement of conditions at the Center, (2) the expansion of community resources and support services in Nassau and Suffolk counties for the mentally retarded and for their families and (3) transfer of most of the clients at the Center to small community residences.

Defendants, sued in their official capacity, are the Governor of the State of New York and the personnel of the New York State Office of Mental Retardation and Developmental Disabilities. Jurisdiction is not disputed. 28 U.S.C. §§ 1331, 1343.

The Center is a state-run residential institution for the mentally retarded on 465 acres in Melville, Long Island, New York. The history of the Center and its problems are fully described in published opinions. *See, e.g., Society for Good Will to Retarded Children, Inc. v. Cuomo,* 572 F.Supp. 1298, 572 F.Supp. 1300 (E.D.N.Y.1983), *vacated and remanded,* 737 F.2d 1239 (2d Cir.1984). While the census at the Center has been reduced by a variety of means, including setting up small community residences, it remains one of the largest in the nation.

In February of 1983 the Court, after an extensive trial and repeated visits to the institution, issued an interim memorandum finding that conditions and treatment at the Center failed to meet the minimum standards required by the Constitution and statutes. As modified that plan was embodied in this court's decree of August 3, 1983. *Society for Good Will to Retarded Children v. Cuomo,* 572 F.Supp. 1300 (E.D.N.Y.1983), *vacated and remanded,* 737 F.2d. 1239 (2d Cir.1984).

While the case was on appeal, the Supreme Court sharply curtailed the power of federal courts to require changes in state institutions based upon the enforcement of state law. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Society for Good Will to Retarded Children v. Cuomo,* 737 F.2d at 1252. Accordingly, the Court of Appeals remanded the case for further consideration and, more particularly, for findings on the particular federal—not state—statutes and constitutional violations present. *See Society for Good Will to Retarded Children v. Cuomo,* 737 F.2d 1239 (2d Cir.1984).

Such findings proved unnecessary since after remand the state voluntarily agreed to enforce the plan already approved by the court. The case was therefore dismissed as moot. The court noted, however, that "[i]f the defendants substantially depart from the implementation of the plan and conditions at the facility violate federal law, this Court will reinstate the case since the issues remanded by the Circuit would no longer be moot." *Society for Good Will to Retarded Children v. Cuomo,* 103 F.R.D. 168, 169 (E.D.N.Y.1984). Annual reports by the institution to the court were required.

In 1985, the court revisited the institution. Being satisfied of reasonable and largely successful efforts to carry out the plan, the court terminated the obligation for further reports.

Plaintiffs now move to reinstate the case. They allege continuing serious violations of federal constitutional and statutory rights. More particularly, they point to an order of the New York Department of Social Services imposing sanctions on the institution for what plaintiffs characterize as "extensive and continuing violations of the Federal requirements for participation in the Medicaid program as an intermediate case facility for the mentally retarded...." *See* 42 U.S.C. §§ 1396, 1396d(c), 1396d(d), 42 C.F.R. §§ 442.400 *et seq.* Plaintiffs also move for the appointment of a master to oversee implementation of the plan.

Upon argument of the motions the court orally expressed the view that the motions should be denied. It was the court's then view that the decision in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), required that it either bifurcate the case to exclude all state issues, or that it abstain from exercising jurisdiction over the federal claims in order that a single action on both state and federal claims might be brought in state court. Since complex issues of fact underly both the state and federal issues, bifurcating the case would, the court then believed, result in wasteful duplication of scarce federal and state judicial resources and unnecessarily burden the administrators of the Center with the defense of possible multiple lawsuits, thereby draining their time and energies away from the urgent task of implementing the plan. Moreover, bifurcation might unduly delay effective relief, as the case would have to wind its way consecutively through two court systems, with the distinct possibility of reversals, remands and bouncing back and forth between two sets of courts and a variety of administrative agencies—both state and federal.

■ Further reflection suggests that while abstention has substantial benefits in meeting the dilemmas posed by *Pennhurst,* the dangers of this approach may be too great. The most important of these dangers is posed by the closing—even temporarily—of federal courthouses to those in state institutions who claim a violation of both federal and state rights; state courts are now the only forum in which all claims—state and federal—can be tried in one proceeding. If federal courts have any overriding reason for being, it is as a source of protection to any person who believes there is a serious violation of his or her federal constitutional rights—particularly by government officials. The institutionalized mentally disabled are especially prone to abuse unless they can turn to the federal courts for protection. *See, e.g., Bowen v. City of New York,* — U.S. —, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

It is doubtful whether the New York State courts, overburdened as they are, can operate with sufficient speed and efficiency to protect the federal rights of these plaintiffs and simultaneously protect their state rights. The choice by plaintiffs of the federal court—even though the state court could in one suit enforce both state and federal rights—suggests that they believe that the federal courts provide them with some advantages over the state courts. Finally, in this case, the long relationship of this court to the litigation and to the institution provides some hope for a reduction of the fact and law finding burdens of this new phase of the litigation.

To understand the difficult jurisdictional choices posed by a litigation of this kind, it is necessary to briefly review the pre- and post-*Pennhurst* situation. It is to this history that we now turn.

## II. PENDENT JURISDICTION AND ABSTENTION DOCTRINES

### Effect and Background of Pennhurst

■ In *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Court held that the Eleventh Amendment was a bar to federal courts hearing claims against state officials based upon state law. "[A] federal suit against state officials on the basis of

state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself." *Pennhurst*, 465 U.S. at 117, 104 S.Ct. at 917. Accepting federal funds to run the institution does not constitute a waiver of this constitutional bar. *Atascadero v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 3149–50, 87 L.Ed.2d 171 (1985).

### Pendent Jurisdiction

■ When this case was tried in 1983 it was appropriate, based upon the doctrine of pendent jurisdiction, for this court to hear both state and federal claims. Since the state and federal claims were intertwined and based upon the same factual issues, taking jurisdiction was appropriate. A federal court has the power to exercise jurisdiction over state claims when they are close enough to a substantial federal question claim that the court "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

The doctrine of pendent jurisdiction flows from *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). Relying on Article III of the Constitution, the Court there held that federal courts have authority to determine all questions of fact or law which arise in a suit, even those that go beyond the particular issue which gave rise to federal jurisdiction. *See also Greene v. Interurban Railroad Co.*, 244 U.S. 499, 508, 37 S.Ct. 673, 677, 61 L.Ed. 1280 (1917) (federal court exercising federal question jurisdiction may decide state law questions regardless of its determination of the federal question). Essentially this line of cases is based upon the need for judicial efficiency and the avoidance of multiple litigation.

■ Exercise of pendent jurisdiction is, however, restricted by the Eleventh Amendment, which prohibits suits against states. The Supreme Court has upheld exceptions to the Eleventh Amendment bar in cases of waiver and of abrogation of the states' immunity by Congress under its fourteenth amendment enforcement clause powers. A state may explicitly waive its immunity. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974); *Clark v. Barnard*, 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883). A finding of constructive consent to be sued is not favored in Eleventh Amendment cases. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974); *Employees of Department of Public Health & Welfare v. Missouri*, 411 U.S. 279, 285–87, 93 S.Ct. 1614, 1618–19, 36 L.Ed.2d 251 (1973). The Court did find, however, a waiver by implication from the commerce clause in *Parden v. Terminal Railway of Alabama State Docks Dep't*, 377 U.S. 184, 190–91, 84 S.Ct. 1207, 1212, 12 L.Ed.2d 233 (1964).

■ Jurisdiction to hear claims against a state may be conferred on the federal courts by Congress when it abrogates the states' immunity in legislation enacted pursuant to the enforcement clause of the Fourteenth Amendment. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2771, 49 L.Ed.2d 614 (1976). Abrogation of the Eleventh Amendment requires "unmistakable language in the statute itself." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985). *See also* Brown, *State Sovereignty Under the Burger Court—How the Eleventh Amendment Survived the Death of the Tenth: Some Broader Implications of Atascadero State Hospital v. Scanlon*, 74 Geo.L.J. 363, 382–88 (1985); note, *Congressional Abrogation of State Sovereign Immunity*, 86 Colum.L.Rev. 1436, 1440–48 (1986) (authored by J. Feder).

Before *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Eleventh Amendment bar was limited to a claim against a state as the named defendant, *see, e.g., Missouri v. Fiske*, 290 U.S. 18, 26, 54 S.Ct. 18, 20–21, 78 L.Ed. 145 (1933), *Osborn v. United States Bank*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), or where "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

The hand of the federal courts was strengthened with *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that the district court had jurisdiction to hear an action against a state official where the official acted *ultra vires.* Based on this notion the Eleventh Amendment issue was eroded to the vanishing point in modern federal institutional reform litigation. Invariably it would be alleged that the state official was not acting within his statutory authority.

█ The federalism balance began to swing back to the state courts in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). There the *Young* doctrine was restricted to prospective actions for injunctive relief against state officials. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), further restricted *Young,* calling it a "fiction," needed only when it is necessary to promote the vindication of federal rights. 465 U.S. at 105, 104 S.Ct. at 911. The Court concluded in *Pennhurst* that

> [a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

465 U.S. at 106, 104 S.Ct. at 911. Since *Pennhurst,* it has been clear that—absent an unambiguous Congressional mandate under its Fourteenth Amendment powers—a federal district court does not have jurisdiction to hear the state claims in a case such as the one before us.

Part of the problem with applying the *Pennhurst* decision lies in the fact that the law on the Eleventh Amendment has so recently shifted that practice has not yet adjusted. The ground is still trembling from aftershocks. *See, e.g.,* Bartels, *Exceptional Circumstances: Quo Vadis?* 60 St. John's L.Rev. 415 (1986); Address by Paul J. Mishkin, Professor of Law, University of California at Berkeley, Federal Judges Seminar (June 16, 1986) (judicial notice taken; on file in Clerk's Office, U.S. D.C., E.D.N.Y.); Brown, *Beyond Pennhurst: Protective Jurisdiction, the Eleventh Amendment, and the Power of Congress to Enlarge Federal Jurisdiction in Response to the Burger Court,* 71 Va.L.Rev. 343 (1985); Brown, *State Sovereignty Under the Burger Court—How the Eleventh Amendment Survived the Death of the Tenth: Some Broader Implications of Atascadero State Hospital v. Scanlon,* 74 Geo.L.J. 363 (1985); Chmerinsky, *State Sovereignty and Federal Court Power: The Eleventh Amendment After Pennhurst v. Halderman,* 12 Hastings Const. L.Q. 643 (1985); Smith, *Pennhurst v. Halderman: The Eleventh Amendment, Erie and Pendent State Law Claims,* 34 Buffalo L.Rev. 227 (1985); Shapiro, *Wrong Turns: The Eleventh Amendment and the Pennhurst Case,* 98 Harv.L.Rev. 61 (1984); Rudenstine, *Pennhurst and the Scope of Federal Judicial Power to Reform Social Institutions,* 6 Cardozo L.Rev. 71 (1984); Fletcher, *A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather Than a Prohibition Against Jurisdiction,* 35 Stan.L. Rev. 1033 (1983); Gibbons, *The Eleventh Amendment and State Sovereign Immunity: A Reinterpretation,* 83 Colum.L. Rev. 1889 (1983); Nowak, *The Scope of Congressional Power to Create Causes of Action Against State Governments and the History of the Eleventh and Fourteenth Amendments,* 75 Colum.L.Rev. 1413, 1441–45 (1975); Note, *The Eleventh Amendment's Lengthening Shadow Over Federal Subject Matter Jurisdiction: Pennhurst State School & Hospital v. Halderman,* 34 DePaul L.Rev. 515 (1985).

*Pennhurst* represented a sharp break with the prior practice in federal courts. In a case where federal constitutional and state statutory issues were intertwined, pre-*Pennhurst* it was usual to rely upon state law rather than upon the federal con-

stitution in order to avoid the constitutional issue. As Justice Brandeis stated the Supreme Court's policy:

> The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. This rule has found most varied application. Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.

*Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (citations omitted).

### Choices for the District Court

■ As a result of *Pennhurst*, federal trial courts are left with the choice either to bifurcate the federal and state claims, hearing only the federal claims in federal court, or to abstain. A practical equivalent of abstention is to stay the federal proceedings while state proceedings (pending or prospective) go forward. The plaintiff, then, would have the choice in state court of relying only on the state claims or of seeking to have all claims—both state and federal—heard together. Under the Supremacy Clause state courts would have to enforce both the state and federal claims. The *Pennhurst* Court recognized that "[i]t may be that applying the Eleventh Amendment to pendent claims results in federal claims being brought in state court, or in bifurcation of claims." 465 U.S. at 122, 104 S.Ct. at 919–20.

### Abstention

An alternative to bifurcation is abstention. The federal court could refuse to hear the federal claim leaving the matter for the state court. A possible option of plaintiff then would be to ask the state court to adjudicate only the state claims. Following rejection of the state claims—and subject to res judicata and collateral estoppel bars touched upon below—the plaintiff could conceivably return to the federal courts for adjudication of the federal claim. There are difficulties with these approaches.

The federal courts have a "virtually unflagging obligation ... to exercise jurisdiction given to them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). As Chief Justice Marshall put it:

> It is most true, that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should. The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the constitution.... With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur, which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment and conscientiously to perform our duty.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1824).

Pragmatic considerations of judicial efficiency as well as reasons of comity between court systems and federalism principles led to some erosion of the *Cohens* rule and an expanding abstention doctrine. *See Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention is a "judge-made doctrine." *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Allegheny v. Frank Mashuda Company*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959).

The Court of Appeals for this circuit has synthesized the Supreme Court's abstention adjudications as delineating "four relatively well-defined circumstances" where abstention is appropriate. *Texaco v. Pennzoil*, 784 F.2d 1133, 1147 (2d Cir.1986), *rev'd*, —— U.S. ——, 107 S.Ct. 1519, —— L.Ed.2d —— (1987). *See also, e.g., Law Enforcement Insurance Company, Ltd. v. Corcoran*, 807 F.2d 38, 40 (2d Cir.1986); C.A. Wright, Law of the Federal Courts 303 (4th ed. 1983) (absention "recognized: (1) to avoid decision of a federal constitutional question where the case may be disposed of on a question of state law; (2) to avoid needless conflict with the administration by a state of its own affairs; (3) to leave to the states the resolution of unsettled questions of state law; and (4) to ease the congestion of the federal court docket" when a similar action is pending in a state court).

### 1. *Pullman Abstention*

In *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the plaintiff sued to enjoin an order of the Texas Railroad Commission as discriminatory against blacks in violation of the Fourteenth Amendment. A three judge district court enjoined enforcement of the order. The Supreme Court reversed, holding that the district court should have abstained or stayed the case pending proceedings in the Texas state courts to determine the meaning of the statute relied upon by the Commission. The Court stated:

[The complaint] touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open. Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.

312 U.S. at 498, 61 S.Ct. at 644.

The *Pullman* doctrine rests on the desirability of avoiding unnecessary decisions of constitutional issues where there is present an unclear issue of state law that, once decided, may make it unnecessary to decide

a federal constitutional question. *See Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975); *Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 509–512, 92 S.Ct. 1749, 1756–58, 32 L.Ed.2d 257 (1972). The three essential conditions for *Pullman* abstention are:

that the state law be unclear or the issue of state law be uncertain, that resolution of the federal issue depend upon the interpretation to be given to the state law, and that the state law be susceptible of an interpretation that would avoid or modify the constitutional issue.

*McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir.1976) (citations omitted). *See also Weiser v. Koch*, 632 F.Supp. 1369, 1383 (S.D.N.Y.1986) (abstention in a suit involving shelters for the homeless where federal court would have had to determine state law currently undergoing development).

None of the essential elements for *Pullman* abstention are met in the case at bar. First, the state law is not unsettled. Second, resolution of the federal issues is not logically dependent on resolution of the state law issues. *See Accident Fund v. Baerwaldt*, 579 F.Supp. 729, 730 (W.D. Mich.1984) (abstention where state law upon which federal jurisdictional issue depended unclear). Whether plaintiffs are being denied their due process rights, as well as whether conditions at the Long Island Developmental Center violate federal statutes are questions

that may be decided independently of any decision as to plaintiffs' rights under state law. It is not logically necessary to decide the state law issues first, before reaching the constitutional claim; the constitutional claim is alternative to, rather than dependent upon, the state law claims.

*Canaday v. Koch*, 608 F.Supp. 1460, 1467 (S.D.N.Y.), *aff'd sub. nom. Canaday v. Valentin*, 768 F.2d 501 (2d Cir.1985). In this very litigation the Court of Appeals on its remand ordered the trial court to separate the state and federal issues and to decide the federal question without regard

to state law. *See Society for Good Will to Retarded Children v. Cuomo,* 737 F.2d 1239, 1252 (2d Cir.1984). Since the state law issues are not logically preliminary to the federal constitutional issue, the second requirement of the test for abstention is missing.

The third essential element is also not present: Resolution of the state claims will not necessarily preclude the necessity to decide the federal issues. It is possible that no state laws are infringed upon, but that the federal constitution or statutes are violated.

### 2. *Burford Abstention*

In *Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), plaintiff Sun Oil brought a federal court suit attacking an order of the Texas Railroad Commission which granted Burford the right to drill on certain land for oil. The Court held that abstention was appropriate in these circumstances: The federal government had left the responsibility for regulating the industry to the states; there was an effective state administrative system; the legislature "ha[d] established a system of thorough judicial review by its own State courts"; 319 U.S. at 325, 63 S.Ct. at 1103, and the state law on the issue was unsettled. The Court noted that the "federal courts can make small contribution to [a] well organized [state] system of regulation and review...." 319 U.S. at 327, 63 S.Ct. at 1104.

Federalism and comity concerns are reflected in *Burford* abstention. This type of abstention enables federal courts to refrain from becoming involved with state policymaking and enforcement procedures in complex areas which are primarily the state's concern. In *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), the Court held abstention by the district court proper in a case concerning the scope of the eminent domain power of municipalities under state law since the state law was unsettled. *See also Kaiser Steel Corp. v. W.S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968); *Hawks v. Ha-*

*mill,* 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933); *but see County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 195, 79 S.Ct. 1060, 1067, 3 L.Ed.2d 1163 (1959) (abstention inappropriate where state law of eminent domain settled). These cases primarily involve financial concerns, not life and liberty. *Burford* abstention is not useful in the case at bar.

Even the broad view of *Burford* abstention in *Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980), cannot override the clear duty of federal district courts to protect the federal constitutional rights of incompetents held in a state institution. *See Quinn v. Aetna Life and Casualty Co.,* 616 F.2d 38, 41 (2d Cir.1980) ("abstention cannot be ordered simply to give state courts the first opportunity to vindicate" a claim); *cf. Naylor v. Case and McGrath, Inc.,* 585 F.2d 557, 565 (2d Cir.1978) (abstention not proper where rendering federal decision will not "be disruptive of the even development of state law"). In *Levy v. Lewis,* 635 F.2d 960 (2d Cir.1980), plaintiff filed a claim in federal court against the state superintendent of insurance alleging misfeasance in the state's handling of an employee welfare benefit plan. The federal court had jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1381. Affirming the district court's dismissal of the case, the Second Circuit held that rather than dismiss for failure to state a claim, the court should have invoked the *Burford* abstention doctrine. The Court of Appeals stated that *Burford* applies even when complex issues of state law are not present:

Appellant argues, however, that this case is not governed by those decisions in which abstention was ordered under *Burford* because most decisions applying *Burford* have involved complex issues of state law. We disagree. In *Burford* itself, violations of federal law were alleged. The claims there amounted to an attack on the reasonableness of the state administrative action. Thus federal review, while involving decision of a federal question, would have entailed a recon-

sideration of the state administrative decision, carrying with it the potential for creating inequities in the administration of the state scheme. *Burford* thus suggests that proper respect for the expertise of state officials and the expeditious and evenhanded administration of state programs counsels restraint on the part of the federal courts.

*Levy v. Lewis,* 635 F.2d 960, 964 (2d Cir. 1980).

In the instant case, where the lives and welfare of incompetents are involved, the *Levy* case is not controlling. We are not, as in *Levy,* concerned with "the proper respect for the expertise of state officials and the expeditious and evenhanded administration of state programs." *Id.* at 964. Involved here are the futures of people incapable of caring for themselves. "Federal Courts have been reluctant to abstain when fundamental rights ... are involved." *Quilici v. Village of Morton Grove,* 695 F.2d 261, 265 n. 2 (7th Cir.1982).

*Levy* is also distinguishable from the instant case because there both federal and state jurisdiction were invoked. Here only federal jurisdiction is relied upon.

### 3. *Younger Abstention*

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court held that, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction should not be invoked for the purpose of restraining state criminal proceedings. This form of abstention also has been applied to cases involving state nuisance prosecutions which are directed at obtaining the closure of places exhibiting obscene films, *see Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) and to cases involving the collection of state taxes. *See Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). Abstention under *Younger* is inappropriate in the instant civil case brought to improve the lives of the developmentally disabled.

### 4. *Colorado River Abstention*

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), involved the concurrent exercise of jurisdiction by both federal and state courts. The United States brought an action in federal court against water users for a declaration of the government's rights to water in certain rivers. The suit was brought under both federal and Colorado law. After the federal suit had been started, one of the defendants filed another suit in Colorado state court on the same claims. Defendants then filed a motion in federal court to dismiss on the ground of the McCarran Amendment, 43 U.S.C. § 666, which grants the United States' consent to be joined as a defendant in a suit for the adjudication of water rights. The Supreme Court found that although this case did not fall within previously enumerated abstention doctrines, the district court's refraining from hearing the case was appropriate. However, the Court warned:

[T]here are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdiction, either by federal courts or by state and federal courts. These principles rest on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (citations omitted).

While declining to prescribe a hard and fast rule for dismissals in cases involving the exercise of concurrent jurisdiction, the Court described the factors relevant to its decision:

[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts.... [A] federal court may also consider ... the inconvenience of the federal forum;

the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.

424 U.S. at 818–19, 96 S.Ct. at 1246–47 (citations omitted). In *Moses H. Cone Memorial Hospital v. Mercury Construction*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court noted that its primary concern in *Colorado River* was the narrow circumstance in which there is a clear indication of congressional intent that the federal and state issues be tried jointly by one court. *See Moses H. Cone Memorial Hospital v. Mercury Construction*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).

Abstention in the instant case does not come within the *Colorado River* abstention doctrine. There is neither a *res*, nor is there the concurrent exercise of federal and state jurisdiction.

Each of the four abstention doctrines outlined above has been carefully circumscribed. None seriously erodes the clear policy that a federal court should not decline to accept cases within its jurisdiction. While not decisive, we note that abstention in the instant case might cause serious issue preclusion and claim preclusion problems.

### Claim and Issue Preclusion

On the same day that *Pennhurst* was handed down, the Supreme Court ruled on a claim of the preclusive effect of a state-court judgment in the context of a subsequent federal suit under 42 U.S.C. §§ 1983 and 1985. In *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the plaintiff first brought suit in the Ohio Court of Common Pleas where she did not litigate her federal claim. The Supreme Court affirmed the district court's holding that her federal suit was barred by the state court judgment since her federal claim could have been litigated in the state court proceeding. The court held that in section 1983 cases, as in other federal actions, the federal full faith and credit statute, 28 U.S.C. § 1738, gave the state-court judgment "the same claim preclusive effect in federal court that the judgment would have" in state court. 465 U.S. at 85, 104 S.Ct. at 898. *See also University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 3226–27, 92 L.Ed.2d 635 (1986) (federal common law rule of preclusion bars relitigation of facts found by "state administrative bodies acting in a judicial capacity" when "the parties have had an adequate opportunity to litigate").

After *Pennhurst* a litigant who wishes to join state law claims against a state official with federal claims must file in state court. Procedurally, the litigant who wishes to preserve his federal claims for hearing in federal court must first file in federal court and, after that court abstains,

inform the state courts that he is exposing his federal claims there only for the purpose of complying with [the requirement to inform the state court of his federal claims, so that the state law can be construed in light of the federal claims], and that he intends, should the state courts hold against him on the question of state law, to return to the District Court for disposition of his federal contentions. Such an explicit reservation is not indispensable; the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily did more than [inform the court] and fully litigated his federal claims in the state courts. When the reservation has been made, however, his right to return will in all events be preserved.

*England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 421–22, 84 S.Ct. 461, 468, 11 L.Ed.2d 440 (1964). Unless this procedure is followed the liti-

gant can be precluded from bringing the action in federal court. *See Fay v. South Colonie Central School District,* 802 F.2d 21, 28–31 (2d Cir.1986) (injunctive relief on constitutional claims barred by *res judicata* because they could have been litigated in previous state court proceedings); *see also* Address by Paul J. Mishkin, Professor of Law, University of California at Berkeley, Federal Judges Seminar (June 16, 1986) (judicial notice taken; on file in Clerk's Office, U.S.D.C., E.D.N.Y.) (discussing preclusive effects as a consequence of *Pennhurst* ); Smith, *Pennhurst v. Halderman: The Eleventh Amendment, Erie and Pendent State Law Claims,* 34 Buffalo L.Rev. 227, 272–88 (1985) (discussing problems of claim and issue preclusion when concurrent jurisdiction is exercised); Chemerinsky, *State Soverignty and Federal Court Power: The Eleventh Amendment After Pennhurst v. Halderman,* 12 Hastings Const.L.Q. 643, 658–59 (1985) (same); Shapiro, *Wrong Turns: The Eleventh Amendment and the Pennhurst Case,* 98 Harv.L. Rev. 61, 80–82 (1984) (claim preclusion problems caused by confluence of *Pennhurst* and *Migra* ). In effect, this procedural necessity results in delays and additional use of court time.

■■■ Issue preclusion occurs when an issue of fact or law was actually litigated and determined by a valid and final judgment. The determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Court held that the federal full faith and credit statute, 28 U.S.C. § 1738, required that issue preclusion be applied in a federal section 1983 suit to bar reconsideration of a state court's determination of the constitutionality of a search and seizure. Similarly, when a federal court stays proceedings or abstains, forcing the case to be litigated first in state court, should the federal claims thereafter come before a federal court, that court may be barred from relitigating issues already heard by the state court.

### Power of Bifurcation

■■■ Bifurcation of claims between the federal and state courts is within the district court's discretionary power. As the Court of Appeals for the Second Circuit has put the matter:

> In exercising its discretion [to bifurcate a case] the district court will undoubtedly keep in mind that a portion of [the] action must be brought in the federal court, that the district court and the parties have already devoted considerable time and effort to the other incidents of alleged wrongdoing, that bifurcation of the claims may be wasteful and that success on the pendent claims may afford plaintiffs substantially complete relief.

*Morrissey v. Curran,* 567 F.2d 546, 549 (2d Cir.1977). Numerous post-*Pennhurst* courts have found the alternative of bifurcation acceptable, or even preferable, to abstention in Eleventh Amendment cases. *See, e.g., Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 968–69 (2d Cir.1984) (summary judgment on federal claim reversed; pre-*Pennhurst* dismissal of state law claims affirmed on the basis of *Pennhurst* ); *Woe v. Cuomo,* 729 F.2d 96, 102, 106 (2d Cir.1984) (all claims dismissed by district court prior to decision in *Pennhurst;* federal due process claim reinstated by Court of Appeals), *cert. denied,* 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1985); *Beaver v. Bridwell,* 598 F.Supp. 90 (D.Md.1984); *Hayward v. Thompson,* 593 F.Supp. 57, 58–59 (N.D.Ill. 1984); *Wylie v. Kitchin,* 589 F.Supp. 505, 510–11 (N.D.N.Y.1984); *Everett v. Schramm,* 587 F.Supp. 228, 234–35 (D.Del. 1984), *aff'd,* 772 F.2d 1114 (3d Cir.1985); *Gelber v. Rozas,* 584 F.Supp. 902, 904 (S.D. Fla.1984); *Jones v. Singer Career Systems,* 584 F.Supp. 1253, 1258 (E.D.Ark. 1984); *Diotte v. Blum,* 585 F.Supp. 887, 897 (N.D.N.Y.1984).

The court has considered the importance of the federal claims to members of the plaintiff class; the fact that the Court of Appeals has already held, in effect, that bifurcation here is practical when it de-

manded a decision on federal issues only; and the extensive experience of the court with the institution. These "factors are 'to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand' ". *Law Enforcement Insurance Co., Ltd. v. Corcoran*, 807 F.2d 38, 44 (2d Cir. 1986). Weighing these and other relevant considerations, on balance, bifurcation is less objectionable than abstention.

### III. CONCLUSION

Plaintiffs' claims should not be precluded. The federal courts are open to them.

The case should be conducted as a litigation independent from the case already in effect long closed. Accordingly, the clerk is directed to open a new file temporarily entitled "In re Long Island Developmental Center"—the new name of the former Suffolk Developmental Center. No payment of fees shall be required since the court takes judicial notice that the individual plaintiffs are substantially without funds.

Plaintiffs' application for appointment of a special master to oversee implementation of the 1984 consent decree is denied. Rule 53 of the Federal Rules of Civil Procedure permits district courts in non-jury cases to name a special master in "any action ... upon a showing that some exceptional condition requires it." Since we deem plaintiffs' motion to reopen the complaint in a new action, a finding that exceptional conditions require the appointment of a special master would be premature. *Cf., e.g.,* Levine, *The Role of Special Master In Institutional Reform Litigation,* 1986 Law and Policy 275, 317 (collecting references).

Plaintiffs shall have sixty days to serve a complaint. Defendants shall be deemed served with a summons and complaint in this new action by service of plaintiff's motion in 78 C 1847 returnable October 29, 1986. All papers filed in 78 C 1847 on and after September 29, 1986 shall be transferred to the new file.

So ordered.