**SOCIETY FOR GOOD WILL TO RE-TARDED CHILDREN, INC., et al.,**
**Appellees, Cross–Appellants,**

v.

**Mario M. CUOMO, as Governor of the State of New York, et al., Appellants, Cross–Appellees.**

**Nos. 821, 822, 823, Dockets 89–7896, 89–7920, 89–9138.**

United States Court of Appeals, Second Circuit.

Argued March 21, 1990.

Decided May 4, 1990.

Caren S. Brutten, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Stephen Mendelsohn, Asst. Atty. Gen., New York City, O. Peter Sherwood, Sol. Gen., Lawrence S. Kahn, Deputy Sol. Gen., Albany, N.Y., on the brief) for appellants Mario M. Cuomo, et al.

Michael S. Lottman, East Hartford, Conn. (Murray B. Schneps, Aquebogue, N.Y., on the brief) for appellees Society for Good Will to Retarded Children, Inc., et al.

Before TIMBERS, NEWMAN and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants/cross-appellees Mario Cuomo et al. (collectively "appellants" or "LIDC officials") and appellees/cross-appellants Society for Good Will to Retarded Children, Inc., et al. ("the Society") appeal from an order and judgment entered August 3, 1989, 718 F.Supp. 139, in the Eastern District of New York, Jack B. Weinstein, *District Judge*, finding constitutional violations in conditions and treatment at the Long Island Developmental Center ("LIDC") and ordering population reduction and community placement as remedial measures.

Both sides find fault with various aspects of the district court's judgment. On appeal, appellants contend that the court (1) clearly erred in finding that housing, food, medical treatment and habilitation at LIDC were constitutionally inadequate; and (2) exceeded its authority in ordering population reduction and community placement as remedial measures to correct constitutional deficiencies. On cross-appeal, the Society contends that the court erred in (1) refusing to address its federal statutory claims; (2) ordering placement of patients in small residential units (known as "SRUs"); (3) increasing the average bed size of community residences; and (4) refusing to appoint a special master to oversee LIDC. The Society also appeals from the court's denial of its Rule 60(b) motion to resettle the court's order entered August 3, 1989 with respect to the bed size of community residences.

For the reasons which follow, we reverse the order and judgment of the district court and we remand the case for further proceedings consistent with this opinion.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. This eleven-year old class action comes before us for the third time. We assume familiarity with prior opinions of this Court and the district court. *Society for Good Will to Retarded Children, Inc. v. Cuomo*, 572 F.Supp. 1300 (E.D.N.Y. 1983), *vacated and remanded*, 737 F.2d 1239 (2 Cir.1984) (*"Good Will I"*); 103 F.R.D. 168 (E.D.N.Y.1984); 652 F.Supp. 515 (E.D.N.Y.1987), *rev'd*, 832 F.2d 245 (2d Cir.1987) (*"Good Will II"*).

The Long Island (formerly Suffolk) Developmental Center is a state-operated school for the mentally retarded. On August 23, 1978, the Society (the parents' organization at LIDC) and thirteen mentally retarded LIDC residents commenced a class action on behalf of themselves and all other mentally retarded LIDC residents. Appellants, sued in their official capacities, are the Governor of New York, two state officials in the Office of Mental Retardation and Developmental Disabilities, and the Director of LIDC. This action challenged conditions at LIDC and sought various forms of declaratory and injunctive relief. On May 15, 1980, the district court certified the plaintiff class.

Following a bench trial in 1983, the district court found that conditions and treatment at LIDC fell below constitutionally-required minimums. It ordered LIDC officials to develop a detailed plan to improve the facility. Appellants complied and submitted a written four-year plan for improvement of LIDC and the living conditions of its residents.

By order of August 10, 1983, the district court issued a decree which embodied a modified version of the plan submitted by appellants (known as the "McCormack Plan"). *Society for Good Will, supra,* 572 F.Supp. at 1352–64. The decree was based on federal constitutional and state law grounds. In view of its holding, the court declined to adjudicate any of the class' claims under various federal statutes. *Id.* at 1349.

On appeal and cross-appeal, we vacated the district court's order of August 10, 1983. *Good Will I, supra,* 737 F.2d at 1239. We held that that part of the order which required community placement could not be justified on federal constitutional grounds. *Id.* at 1247–49. We further held that there is no entitlement to community placement or a "least restrictive environment" under the federal Constitution. *Id.* at 1248–49. Specifically, we held that the district court misapplied the *Youngberg* "professional judgment" standard, *Youngberg v. Romeo,* 457 U.S. 307 (1982), in holding that "[t]he Constitution mandates community placement for those who have been adjudged by qualified professionals to require a community setting." *Good Will I, supra,* 737 F.2d at 1248 (quoting *Society for Good Will, supra,* 572 F.Supp. at 1347). Since LIDC's decision to retain residents was not a "substantial departure" from prevailing standards of practice, see *Youngberg, supra,* 457 U.S. at 323, we concluded that that decision satisfied minimum professional standards. *Good Will I, supra,* 737 F.2d at 1249.

Moreover, we held that "the community placement order also cannot be justified as a remedy to correct the unconstitutional conditions found at [LIDC]." *Id.* at 1251. We observed, however, that, apart from the community placement part of the order, most of the court's order arguably could be supported under the federal Constitution. Since the Eleventh Amendment bars federal courts from granting state law relief in actions against state officials, *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89 (1984), decided after the district court's decision in *Good Will I,* we remanded the case for reconsideration so that the district court could determine which parts of its order were supported by federal law. We further instructed the district court that on remand it might consider the Society's federal statutory claims.

On remand, appellants volunteered to implement the McCormack Plan, as modified by the district court's order of August 10, 1983. In light of this action, Judge Weinstein dismissed all remaining claims as moot. *Society for Good Will, supra,* 103 F.R.D. at 169. In 1986, the Society moved to reinstate its action, contending that LIDC officials had not implemented the McCormack Plan. Judge Weinstein denied the motion, but allowed the Society to file its motion as a new complaint. *Society for Good Will, supra,* 652 F.Supp. at 527. The Society instead appealed to our Court from the order denying its motion to reinstate the action. We reversed and remanded, directing (1) that the original action be reinstated; (2) that the court consider whether the state had waived sovereign immunity; and (3) that further proceedings be conducted to allow the Society to obtain any relief to which the plaintiff class may be entitled. *Good Will II, supra,* 832 F.2d at 246.

Following this latest remand, the district court held seven days of hearings in May and June, 1988. At these hearings, LIDC officials testified to planned renovations at LIDC, including the restoration of small cottages and construction of small residential units, which would accommodate a total of 488 residents. Judge Weinstein revisited LIDC. He toured the site of the new SRUs being developed on the grounds of LIDC. LIDC officials and their expert witnesses testified to improvements at LIDC in housing, food, sanitary conditions, and resident care. The Society and its ex-

perts, on the other hand, introduced federal and state surveys showing that conditions and treatment at LIDC were less than acceptable and did not comply with applicable federal standards.

By its order and judgment entered August 3, 1989, 718 F.Supp. 139, the district court held that the constitutional rights of LIDC residents under the due process and equal protection clauses of the Fourteenth Amendment were being violated. Although it noted that there had been "[e]normous improvements in conditions at the Center", the court found a constitutionally intolerable "loss of capacity" in LIDC residents as a result of inadequate facilities, treatment, and habilitation. *Id.* at 140. In view of these findings, the court held that it was not necessary to reach any of the Society's federal statutory claims. It declined to find any waiver by the state of its sovereign immunity. It also held that appointment of a special master to supervise the institution was not necessary, since LIDC officials "are fully committed to improvement" and had been "relatively forthcoming in [the state's] budgetary allocations." *Id.* at 141. As a remedial measure, the court ordered reduction of the client population by transferring patients to small residential settings in the community. Subsequently, the court denied the Society's Rule 60(b) motion to resettle the order with respect to the size of community facilities.

This appeal and cross-appeal followed.

## II.

### (A)

We turn first to appellants' contention that the district court's findings of constitutional deficiencies in conditions and treatment at LIDC were clearly erroneous. LIDC officials assert that those findings are not supported by the weight of the evidence. They urge us to reverse. We agree that the case must be reversed, but for a different reason.

██ The district court found violations of constitutional magnitude in six respects at LIDC: safe conditions, bodily restraints,

training (or "habilitation"), housing, food, and medical treatment. In its order and judgment of August 3, 1989, the court referred to "oral findings made on the record." 718 F.Supp. at 141. A review of the record, and in particular the oral findings at the hearing of June 8, 1989, however, discloses only conclusions of law—not specific findings of fact. At that hearing, Judge Weinstein stated:

"Plaintiffs have made out a prima facie case of constitutional violation and a violation of federal statutes.... [T]he standards laid down by the Court of Appeals, I think, at least from a prima facie point of view, have been shown to be violated. The testimony of the plaintiff's witnesses shows regression which is the key to the constitutional violation and the very extensive state and federal listings of lack of compliance with standards shows a prima facie violation of the statutes."

We hold that these conclusory findings, read along with the district court's order and judgment of August 3, 1989, fail to satisfy the fact finding requirement of Fed. R.Civ.P. 52(a).

Rule 52(a) requires that a trial court "find the facts specially and state separately its conclusions of law thereon." *See Inverness Corp. v. Whitehall Laboratories,* 819 F.2d 48, 50 (2 Cir.1987) (per curiam) ("Rule 52(a)'s requirement that the trial court find facts specially and state its conclusions of law is mandatory and cannot be waived."). The requirement that the district court find facts "specially" serves two purposes: "to aid the trial court by requiring it to marshal the evidence before it and, *more importantly,* to aid us in our review." *Republic of Philippines v. New York Land Co.,* 852 F.2d 33, 37 (2 Cir.1988) (emphasis added). On the record before us, we simply cannot appropriately review the district court's findings of constitutional deficiencies to determine whether they are clearly erroneous.

██ Moreover, Judge Weinstein's oral statements at the June 8 hearing cannot justify the sweeping relief granted. On the prior appeal, we agreed with Justice

Blackmun's concurrence in *Youngberg*, 457 U.S. at 327–29 (Blackmun, J. concurring), that an individual has a due process right to training sufficient to prevent basic self-care skills from deteriorating. *Good Will I*, 737 F.2d at 1250. There, we upheld findings of "'numerous examples of precisely the same sort of *regression* condemned in Justice Blackmun's concurring opinion [in *Youngberg*],'" 737 F.2d at 1251 (emphasis added) (quoting 572 F.Supp. at 1348). We concluded that "constitutionally adequate training was not being provided to [LIDC] residents." *Id.* In the record on the instant appeal, no particular instances of regression (i.e., that a resident's basic self-care skills had deteriorated since entering the institution) were shown. We cannot uphold the district court's remedial order and judgment on that basis.

We are aware that in *Good Will I*, we upheld certain of the findings of constitutional violations here involved. 737 F.2d at 1244 (housing); 1246–47 (safe conditions); 1247 (bodily restraints); 1249–51 (training). But we cannot uphold the district court's findings here—made in 1989—based on our decision on the prior appeal. The court's original findings of deficiencies were made in 1983. We upheld those findings in 1984. Furthermore, at the June 8 hearing, and in its August 3 order and judgment, the district court acknowledged that since 1978 or 1979 there have been "[e]normous improvements in conditions at the Center." 718 F.Supp. at 140. The passage of time, combined with the court's observation that there have been improvements at LIDC, makes it improper for us to rely on our decision in *Good Will I* as a basis for upholding findings of deficiencies made in 1989. We are not advised as to which, if any, of the 1984 findings remain valid.

We hold that the district court failed to find facts "specially" as required by Rule 52(a). The court's order and judgment, together with its oral findings, do not support the sweeping grant of relief. Its summary and conclusory findings are simply inadequate to allow for satisfactory review by us. We therefore remand the case with instructions that the district court find facts "specially" in accordance with Rule 52(a).

(B)

Even if we were to disregard the district court's failure to comply with Rule 52(a)—which we do not—the court misapplied the *Youngberg* professional judgment standard in determining that the constitutional rights of LIDC residents were being violated.

In *Youngberg*, the Supreme Court held that "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." 457 U.S. at 323 And we explained in *Good Will I*, 737 F.2d at 1248, that the issue is not whether the optimal course of treatment as determined by some experts was being followed, but whether "'professional judgment *in fact* was exercised.'" *Youngberg, supra,* 457 U.S. at 321, (citation omitted) (emphasis added). In this respect, the district court in the instant case failed to heed the requirements of *Youngberg* and our decision in *Good Will I.*

■ Relying on expert testimony, the district court concluded that there was "loss of capacity in residents" due to LIDC's failure to "provide reasonably safe conditions of confinement, freedom from unreasonable bodily restraints and minimally adequate training." 718 F.Supp. at 140. The court held that these failures amounted to constitutional violations. In so holding, the court failed to determine whether the conditions and treatment at LIDC substantially departed from accepted professional judgment, as required by *Youngberg.* The court instead misused expert testimony by treating it as evidence of alternative choices against which the institution's treatment should be compared.

We stated in *Good Will I* that "the role of the experts is only to assist the court in ascertaining what the minimum professional standard is...." 737 F.2d at 1248. Expert reports and testimony should be used

only to establish the general parameters of acceptable, constitutional activity, and not whether the exercised professional judgment was indisputably correct and unassailable—or for that matter even a better approach to the problem. The district court's role in this respect was not to evaluate different choices and determine which of these choices were better; rather, the court was required to evaluate the challenged treatment to determine whether such treatment had substantially met professionally accepted minimum standards. The court failed to comply with such requirement.

We hold that the district court erred in finding constitutional violations, without first determining whether the conditions and treatment at LIDC substantially departed from accepted professional judgment. On remand, we instruct the district court, in determining the existence of constitutional violations, to identify specifically any ways in which the institution's treatment was "a substantial departure from the requisite professional judgment," *Youngberg, supra,* 457 U.S. at 323 n. 31, and therefore unconstitutional. In its inquiry, the district court should use expert testimony to identify "substantial departures", but not to choose from among several professionally acceptable remedies.

## III.

This brings us to appellants' contention that the district court exceeded its authority in ordering population reduction and community placement as remedial measures to correct the constitutional violations found by the court. Appellants assert that the court's decree was not narrowly tailored to remedy constitutional violations and that the court erred in granting injunctive relief without first identifying the specific constitutional violations that each part of the ordered remedy would cure. We agree.

After finding constitutionally inadequate conditions and treatment at LIDC, the court ordered LIDC officials to take a number of remedial steps, including the "necessary remedial measure" of community

placement. 718 F.Supp. at 141. The court ordered reduction of the resident population at LIDC through transfers to community programs "to the extent reasonable" (moving some 400 individuals over four years), and by placing patients in community residences averaging 12 beds in size. *Id.*

In framing its decree, the district court disregarded our decision in *Good Will I, supra,* 737 F.2d at 1239. On the prior appeal, we held that "there is no constitutional right to community placement," *id.* at 1249, and that community placement "could not be justified as a remedy to correct the unconstitutional conditions found at [LIDC]." *Id.* at 1251.

We cautioned that "[i]njunctive relief should be narrowly tailored to fit the specific legal violations adjudged." *Id.* Moreover, we held that the district court "should not have imposed on appellants the burden of making community placements when the failure to do so has not been determined to violate any constitutional provisions." *Id.* We further instructed the district court that LIDC officials "should first be given a chance to comply with an order geared toward remedying specific constitutional violations before anything more drastic [i.e., community placement] is tried." *Id.* In issuing its decree, the district court failed to comply with our instructions.

The court summarily attempted to justify its remedy by reasoning that "[t]he administrative limitations on the institution make it apparent that the constitutional rights of clients cannot be protected without further reduction of the client population." 718 F.Supp. at 141. The "administrative limitations" were not identified. Presumably they are lack of resources—people and funds—rather than any technical administrative regulation. If that is the case, then the district court should frame a decree that obliges appellants to devote sufficient resources to cure the particular constitutional violations, giving appellants the choice, if they wish, to move residents into community placement rather than increase resources at the institution.

On remand, we instruct the district court, if it finds particular constitutional violations, to tailor any relief it orders narrowly to cure the violations, not simply to optimize conditions at LIDC. In particular, the district court "should specify which protected liberty interest is implicated in each portion of a subsequent order." *Good Will I, supra,* 737 F.2d at 1252. We further instruct the district court that community placement may be ordered only as a remedy of last resort and only when intra-institutional remedies are inadequate to cure the "substantial departures" required by *Youngberg.*

## IV.

After finding that conditions and treatment at LIDC violated the residents' constitutional rights, Judge Weinstein concluded that "it is not necessary to determine whether specific federal statutes are being violated." 718 F.Supp. at 141. On the cross-appeal, the Society asserts that the district court erred in failing to consider whether there have been statutory violations. The Society asserts that the Medicaid statute and regulations, 42 U.S.C. § 1396 (1988), and 42 C.F.R. § 483.400 et seq. (1988), and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1988), offer alternative bases for upholding the relief awarded by the district court and for granting significant additional relief as well.

In *Good Will I,* we vacated the order and remanded the case so that the court could determine which parts of the order were supported by federal law. 737 F.2d at 1252. We stated that "because the district court refrained from deciding federal statutory questions, it may on remand consider the appropriateness of any form of relief, including community placement, under any federal statutory provision specified in the complaint." *Id.*

Normally it would be preferable for a court to consider statutory claims first before proceeding to constitutional claims. But this case may well be the unusual one where that traditional sequence is inappropriate. The constitutional standards in this area are reasonably clear, yet the theories of statutory violations advanced by the Society would require adjudication of novel and complex issues. Under these circumstances, we will require the district court to adjudicate the statutory issues only in the event that it concludes that plaintiffs would be entitled to some forms of relief as a remedy for statutory violations beyond whatever relief the court may order for constitutional violations. We of course express no opinion at this time on the merits of such statutory claims.

## V.

In view of our disposition of this case, the question whether the district court abused its discretion in refusing to appoint a special master is moot. Moreover, since we are remanding the case, we find it neither necessary nor appropriate to address the merits of the Society's other contentions on its cross-appeal, including the denial of its Rule 60(b) motion.

## VI.

To summarize:

We hold that the district court erred in failing to find facts "specially" as required by Rule 52(a), in failing to determine whether conditions and treatment at LIDC substantially departed from accepted professional judgment, and in ordering community placement to remedy the constitutional violations found by the court.

On remand, we instruct the district court to find facts "specially", and to identify specifically any ways in which conditions and treatment at LIDC were "substantial departure[s] from accepted professional judgment." If the court finds constitutional violations, the relief it orders should be narrowly tailored to cure those violations and not aimed at optimizing conditions at LIDC. The court should identify the specific constitutional violation at which each remedial measure is directed. We instruct the district court to consider and make specific findings on the Society's statutory claims in the event that it determines that the plaintiffs would be entitled to some form of relief as a remedy for statutory

violations beyond whatever relief the court may order for constitutional violations.

We reverse the order and judgment of the district court and we remand the case to the district court for further proceedings consistent with this opinion.

Reversed and remanded.