SOCIETY FOR GOOD WILL TO
RETARDED CHILDREN, INC.,
et al., Plaintiffs,

v.

Hugh L. CAREY, as Governor of the
State of New York, et al.,
Defendants.

No. 78 Civ. 1847.

United States District Court,
E.D. New York.

Feb. 24, 1983.

See also D.C., 572 F.Supp. 1300.

Murray B. Schneps, Michael S. Lottman,
New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of the State
of N.Y., New York City by Caren S. Brut-
ten, William J. Caplow, Frederick K. Mehl-
man, Asst. Attys. Gen., New York City,
Alan M. Adler, Deputy Counsel, State of
N.Y., Albany, N.Y., for defendants.

MEMORANDUM, INTERIM
FINDINGS AND ORDER

WEINSTEIN, Chief Judge:

The Suffolk Developmental Center is a
state institution in Melville, Long Island,
housing some 1,200 clients—most of them
profoundly retarded—ranging from young
children to adults in their sixties. This
class action, commenced in August 1978,
seeks, on constitutional and various statuto-
ry grounds, to improve conditions at the
Center and to provide small residential fa-
cilities for most of the clients.

Pending the issuance of a full opinion, the court makes the following interim findings of fact and law:

1. In 1978 the care provided in the Center failed to meet the minimum standards required by the Constitution, thus depriving many clients of their basic constitutional rights.

2. In the last four years conditions at the Center have improved markedly. In part favorable changes have been due to fine institutional leadership, devoted professional and lay staff, lessons learned from the Willowbrook experience (*see, e.g., New York State Association for Retarded Children, Inc. v. Carey*, 393 F.Supp. 715 (E.D.N. Y.1975)), help from volunteers and relatives, and state and federal assistance. In large measure, however, the current positive situation results from the pressure of this lawsuit and evidence adduced by experts and other witnesses.

3. The constitutional rights of many of the Center's clients are still being denied. Further substantial progress is required as a matter of law.

■ The United States Supreme Court has recently described the minimum standards for institutions of this type mandated by the Due Process Clause of the Fourteenth Amendment. *See Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). A state must provide each client with conditions of reasonable safety and freedom from undue restraint, adequate food, shelter, clothing and medical care, and "such training as an appropriate professional would consider reasonable to ensure his safety and to facilitate his ability to function free from bodily restraints." *Id.* 102 S.Ct. at 2462.

The Court specified that these standards are to be determined by the judgment of "appropriate" qualified professionals; "courts must show deference to the judgment exercised by a qualified professional" as long as it is reasonable. *Id.* at 2461. The decision made by a qualified profession-al in charge of the institution "is presumptively valid . . . ." *Id.* at 2462. The Court noted that

> treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded.

*Id.* at n. 30.

■ This substantive rule of deference to on-the-scene professionals may present substantial difficulty in application at the trial level. Experts disagree. More important, perhaps, experts charged with administration of the institution may not feel free to exercise untrammeled professional judgment since they are part of a team and statewide structure. The desire to comply with budgetary pressures and statewide standards may cause a yielding of professional judgment to personal career perspectives. Should these pressures cause the professional in charge to neglect his professional duty to his clients, the court will step in and provide guidance. As the Supreme Court noted, the trial court may impose its own plan

> when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Id.* at 2462.

This case has already been long in resolution. Rather than delay it further while clients continue to suffer constitutional deprivations, the court issues this interim memorandum and order.

Fred A. McCormack, Director of the Suffolk Developmental Center and Director of the Long Island Developmentally Disabled Services Office, is a competent professional. Within sixty days he shall provide the court with a written four year plan for improvement of the Center to the point where every client receives at least the minimum

care required by the Constitution. The plan shall specify for each year commencing September 1, 1983, a program indicating the following in sufficient detail to permit appropriate budgeting, personnel, training and other decisions:

1.  An increased rate of transfer from the central Suffolk Developmental facilities to residential or other small community facilities.

2.  An increased direct care staff ratio at the ward and dormitory care level, as well as in various professional specialties.

3.  An improved training program for those charged with care of clients so that necessary program activities are incorporated in the context of the clients' daily living.

4.  Proper repairs to buildings particularly as to heating and air-conditioning, and provision of adequate recreational and rest facilities for clients and staff.

5.  Adequate prosthetic devices; special clothing where required; specially designed wheel chairs and carts where required, and sufficient numbers of vehicles equipped to transport them; and furniture necessary and appropriate for clients with disabilities of the types involved here.

6.  Proper programming, particularly for those over 21 who are not being educated in the public school systems.

The plan shall not be limited by budgetary restraints presently in effect or proposed. The Director may consult with counsel, supervisory personnel, experts or others. The court desires a plan to be embodied in a decree which will insure compliance with the professional standards required by the Supreme Court. This is essentially a medical-managerial judgment, not one for lawyers. *See id.* at 2461–62.

Within thirty days of receipt of the plan, the court will schedule a further hearing and argument. At that time any of the parties may submit oral or written materials supporting or opposing the plan generally or in any of its details. No further oral

testimony will be taken. Experts, if any, will give their opinions by written statements.

So ordered.