**SOCIETY FOR GOOD WILL TO RE-TARDED CHILDREN, et al., Plaintiffs,**

v.

**Mario M. CUOMO, as Governor of the State of New York, et al., Defendants.**

No. 78–CV–1847 (JBW).

United States District Court, E.D. New York.

Sept. 26, 1990.

Murray B. Schneps, Riverhead, N.Y., Michael S. Lottman, New York City, for plaintiffs.

Caren S. Brutten, Asst. Atty. Gen., New York City, Alan M. Adler, Deputy Counsel, New York State Office of Mental Retardation and Developmental Disabilities, Albany, N.Y., for defendants.

### MEMORANDUM, STIPULATION AND ORDER

WEINSTEIN, District Judge.

The stipulation set out below settles a class action on behalf of mentally-retarded residents of the Long Island Developmental Center filed some twelve years ago. At the time the action was brought visits by the court to the Center revealed a deplorable situation. Clients lay half-naked and unattended in their own urine and feces on cold floors in dismal surroundings while untrained attendants watched television. The facility's inadequate professional personnel failed to provide suitable training or educational programs for residents. Entry into the institution often led to swift physical and emotional deterioration and loss of skills. The huge population of some fifteen hundred clients made effective management and control impossible.

Since that time, observations during visits by the court as well as witnesses and documents reveal a substantial improvement in conditions at the Center. Many clients have been moved to small community-based homes, personnel are generally suitably trained and the professional staff

has been expanded. Clients, in the main, are appropriately dressed, live in tastefully-decorated quarters, receive useful instruction, and are beginning to develop their capacity to live with as much dignity as their conditions allow.

During this litigation an extensive dialogue between the trial and the appellate court judges has emphasized substantial theoretical and practical limits on the power of federal courts to order changes in state institutional practices. *See Society for Good Will to Retarded Children, Inc. v. Cuomo,* 572 F.Supp. 1298 (E.D.N.Y. 1983), 572 F.Supp. 1300 (E.D.N.Y.1983), *vacated,* 737 F.2d 1239 (2d Cir.1984), *on remand,* 103 F.R.D. 168 (E.D.N.Y.1984), 652 F.Supp. 515 (E.D.N.Y.1987), *rev'd,* 832 F.2d 245 (2d Cir.1987), *on remand,* 718 F.Supp. 139 (E.D.N.Y.1989), *aff'd without opinion,* 891 F.2d 278 (2d Cir.1989), *rev'd,* 902 F.2d 1085 (2d Cir.1990); *see also* 574 F.Supp. 994 (E.D.N.Y.1983) (attorneys' fees), *rev'd,* 737 F.Supp. 1253 (2d Cir.1984), *on remand,* 103 F.R.D. 169 (E.D.N.Y.1984).

Nevertheless, cooperation by courts, federal administrative agencies with power to set standards and enforce them by cutoff of funds, dedicated professionals and staff, together with conscientious supervising state agencies provided with adequate funds, can yield significant improvements in state institutions for the developmentally disabled. The constant pressure of a federal suit driven by devoted plaintiffs' counsel and sensitive defense counsel can help accomplish more to enhance the living conditions of confined disabled persons than a black letter statement of the law would suggest is possible. The settlement reads as follows:

WHEREAS, this class action for injunctive relief has been pending since 1978 and has once again been remanded by the Court of Appeals for further proceedings which are likely to be extensive and time-consuming; and

WHEREAS, the parties are desireous of finally bringing this action to a close without the need for another trial and likely appeals,

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the plaintiffs and defendants, that all of the claims set forth in the complaint are hereby settled and resolved, without any determination or concession of liability, as follows:

1.(a) The defendants shall maintain substantial compliance with the Federal Medicaid regulations (42 C.F.R. 483.410 *et seq*) at Long Island Developmental Center (LIDC), including the Sagtikos, Sagamore and the small residential units, and shall maintain the facility's certification as an ICF/MR.

(b) Substantial compliance with Federal Medicaid regulations means, for the purposes of the Stipulation, compliance with the active treatment condition of participation (42 C.F.R. 483.440) and with at least 210 of the following 252 specific survey standards:

| | |
|---|---|
| W107–109 | Health, safety, sanitation |
| W122–139 | Client rights |
| W143–148 | Communication |
| W149–157 | Abuse and neglect |
| W164–181 | Professional program services |
| W182–185 | Facility staffing |
| W186–188 | Direct care staffing |
| W189–194 | Staff training |
| W196–197 | Active treatment |
| W206–248 | Individual program plan |
| W249–251 | Program implementation |
| W252–254 | Program documentation |
| W255–265 | Program monitoring and revision |
| W274–290 | Behavior management |
| W295–309 | Physical restraints |
| W310–318 | Drug therapy |
| W319–328 | Physician services |
| W331–342 | Nursing services |
| W348–350 | Dental services |
| W362–366 | Drug regimen review |
| W407–408 | Client living environment |
| W409–421 | Client bedrooms |
| W422–423 | Storage space |
| W424–426 | Client bathrooms |
| W427–430 | Heating and ventilation |
| W435–437 | Space and equipment |
| W438–439 | Emergency procedures |
| W452–453 | Lead-free paint |
| W454–458 | Infection control |
| W467–476 | Meal service |
| W482–489 | Dining areas |

(c) If LIDC or any unit thereof is decertified, or if the active treatment condition of participation is "NOT MET", or if noncompliance is found in 43 or more of the standards listed in 1(b) above in any Federal or State Medicaid survey, plaintiffs may apply to this Court, upon notice and hearing, for any form of relief and the defendants may oppose such application.

(d) Defendants shall mail copies of all Federal or State ICF/MR deficiency reports and plans of correction, as well as notifications of adverse action with respect to any LIDC unit to the plaintiffs within three (3) working days of their receipt or preparation by the facility.

2. Defendants shall maintain an overall staff to client ratio at LIDC of at least 2 to 1.

3. Between May 17, 1989, and March 31, 1993, no fewer than 425 persons shall be placed off campus in community based residences of an average size of not more than 10 beds and the client census at LIDC (including the Sagtikos, Sagamore and small residential units) will be no more than 515 by March 31, 1993. Defendants shall provide to plaintiffs quarterly reports setting forth the names of every client placed, the agency and street address of the residence, the agency and street address of the day program and the bed size of the residence. The report shall also set forth the same information regarding each failed placement, the causes for each such failure and the plans for the amelioration of the cause and re-placement of each such person.

4. Appropriate services, benefits, accommodations and programs, including but not limited nevertheless, to vocational and pre-vocational programming and community placement opportunities, shall not be denied to any class member or group of class members on the basis of the nature or degree of their handicapping conditions or on the basis of generalized assumptions that they are unable to benefit from certain activities or services.

5. (a) Defendants shall protect the class of residents of LIDC from undue physical harm, preventable loss of skills, and other forms of preventable regression.

(b) The defendants shall retain the services of Ms. Ronnie Cohn, or another person acceptable to plaintiffs' counsel should Ms. Cohn be unavailable, as an independent expert consultant to inspect the facility and report and make recommendations to the parties as to all aspects of conditions, services, care, treatment, education, training, habilitation staffing and other related matters at LIDC (all units) which in her judgment may adversely affect defendants' ability to comply with 5(a) hereof. The independent expert consultant shall issue such a report within 6 months after the execution of this Stipulation and every 12 months thereafter. Additional reports, other than those conducted pursuant to 5(e) below, shall be scheduled by agreement of the parties or by order of the Court.

(c) The independent expert consultant shall have full and complete access to all areas of the institution, all residents, all staff, and all records, documents and reports of any nature she may require or request, and all staff shall be directed, permitted and required to answer all of her questions and requests for information freely, promptly and truthfully without fear of any retribution or disciplinary action. Such access shall be with or without notice on a 24 hour a day, 7 day a week basis during the one-month period prior to the scheduled completion date of each of the above reports.

(d) All reasonable compensation, costs and expenses for the independent expert consultant shall be promptly paid by the defendants at rates approved by the parties or, if they cannot agree, as fixed by the Court.

(e) In connection with any subsequent proceeding related to compliance with or enforcement of any requirement or provision of this Stipulation, the independent expert consultant may be called upon by any party or the Court to inspect, report and make recommendations with respect to any matter before the Court and to give testimony in such proceeding, all in accordance with 5(a)–(d) above and Rule 706, F.R.E., to the extent applicable.

6. The defendants reserve the right to oppose any order requiring more placements than are agreed to in paragraph 3 above or requiring continued participation in the Medicaid program beyond the term of this Stipulation. In any subsequent proceeding related to compliance with or enforcement of any requirement or provision of this Stipulation, nothing contained here-

in shall prevent the use by any party of any evidence already in the record.

7. Defendants, within their lawful authority, shall make every good faith effort to ensure the timely implementation of this Stipulation. This Stipulation is not intended to alter the liability of the State or defendants for money damage actions.

8. This Stipulation shall be in effect until March 31, 1993. Jurisdiction shall be retained by the Court while the Stipulation is in effect or executory as to the community placement or census provisions, or as to any other provision where plaintiffs have moved for relief on or before April 30, 1993. Unless the court orders otherwise the case will be deemed closed on April 30, 1993.

9. Plaintiffs reserve the right to seek an appropriate award of costs and disbursements including attorneys' fees, and defendants reserve the right to oppose such a request.

10. This Stipulation, when approved by the Court, constitutes a final judgment. Upon such approval, the Clerk shall mark the case closed, subject to reopening on motion of any party.

DONE this 14th day of September, 1990.

FOR THE PLAINTIFFS:

/s/ MURRAY B. SCHNEPS

/s/ MICHAEL S. LOTTMAN
    Attorneys for Plaintiffs

FOR THE DEFENDANTS:

/s/ CAREN S. BRUTTEN
    Assistant Attorney General

/s/ ALAN M. ADLER
    Deputy Counsel
    New York State Office of
    Mental Retardation and
    Developmental Disabilities

Upon all the evidentiary hearings, repeated visits to the appropriate facilities and arguments, and based upon modifications required by the court and consented to by the parties, this stipulation of settlement is approved as fair, reasonable and in the best interests of all parties, including present and future members of the class.

SO ORDERED.