In re 599 CONSUMER ELECTRONICS, INC. d/b/a Brothers and BCL Photo, Inc., d/b/a Brothers, Debtors.

In re BROTHERS CAMERAS, INC., Debtor.

In re BROCORP CAMERAS & ELECTRONICS, INC., Debtor.

No. 95 Civ. 903 (MBM).

United States District Court, S.D. New York.

May 3, 1996.

Michael S. Fox, Frederick J. Levy, Maura I. Russell, Traub, Bonacquist & Fox, New York City, for Appellants.

Eugene P. Cimini, Jr., Randi–Sue Weinberg, Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman, Garden City, New York, for Respondent.

## OPINION AND ORDER

MUKASEY, District Judge.

This bankruptcy appeal was filed by several creditors who supplied cameras and other consumer electronic products to four now bankrupt corporations. Appellants challenge the Bankruptcy Court's refusal to order substantive consolidation of the Chapter 7 bankruptcy proceedings of the four debtors. For the reasons that follow, the decision of the Bankruptcy Court is vacated, and the case is remanded.

### I.

A. *The Mizrahi Brothers' Camera Store Empire*

The proceedings below involve four related debtors: Brothers Cameras, Inc. ("Broth-

ers"), Brocorp Cameras & Electronics, Inc. ("Brocorp"), BCL Photo, Inc. ("BCL"), and 599 Consumer Electronics, Inc. ("599"). Each debtor operated a retail outlet in New York City specializing in the sale of cameras and other small electronic devices. The companies and stores were owned and managed by members of the Mizrahi family of Brooklyn, New York. Albert Mizrahi served as President of all four companies. Albert's brother Maurice served as Vice President and Maurice's wife Rachel served as bookkeeper of all four companies. (Tr. at 72–75) [1]

The Brothers store was the flagship of the Mizrahi family's camera store empire. Located at 130 West 34th Street in Manhattan, the store opened in 1979 and closed in 1990. The Brocorp store, located at 200 Broadway in downtown Manhattan, opened in 1985 and closed in 1990. (*Id.* at 76–77) Although both stores ceased doing business in 1990, neither corporation was dissolved at that time. (Appellants' Br. at 4)

The BCL store, located at 466 Lexington Avenue in Manhattan, opened in 1983 and closed in 1992. The 599 store, located at 599 Lexington Avenue in Manhattan, opened in 1987 and closed in 1992. (Tr. at 76–77)

Appellants are 12 suppliers that sold goods to all four companies: Canon U.S.A., Inc., Diplomat Merchandise Corp., Gamla Enterprises N.A., Inc., International Dictating & Telephone Equipment, Inc. ("IDTE"), J & B Trading Company, Minolta Corporation, Olympus Corporation, Pentax Corporation, Pro Mark Distributors, Inc., Ricoh Corporation, Superior Merchandise Electronics Co. ("SME"), and Thomson Consumer Electronics, Inc.

Each appellant was a creditor of Brothers and/or Brocorp when those companies ceased operations in 1990, and each appellant continued to do business with BCL and 599 until 1992. Each appellant received partial payment from BCL and/or 599, on debts owed by Brothers and/or Brocorp, before the for-

---

**1.** References to "Tr." are to the transcript of the hearing on consolidation held before Judge Blackshear of the Bankruptcy Court on November 21, 1994. The transcript is Exhibit 67 of Appellant's Designation of Items to be Included in the Record on Appeal.

mer two companies filed for bankruptcy protection in 1992.

## B. *The Bankruptcy Filings*

On May 4, 1992, BCL and 599 filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. Four days later, the Bankruptcy Court entered an order consolidating those two proceedings for administrative and procedural purposes only. On July 1, 1992, the Bankruptcy Court converted the two cases into Chapter 7 liquidation cases. In July 1992, respondent Kenneth Silverman was appointed trustee for the estates of BCL and 599. (Ex. 1 ¶¶ 1–2; Ex. 2 ¶¶ 1–3)[2]

On October 25, 1993, Silverman filed two adversary proceedings in the Bankruptcy Court. As trustee for 599, Silverman sued Gamla, IDTE, Minolta, Olympus, Ricoh, SME, and Thomson, seeking to set aside as fraudulent conveyances the payments those suppliers had received from 599 in satisfaction of debts owed by Brothers and Brocorp. (Ex. 2 ¶ 5) As trustee for BCL, Silverman pressed a similar lawsuit against Canon, Diplomat, Gamla, IDTE, J & B, Minolta, Olympus, Pentax, Pro Mark, SME, and Thomson. (*Id.* ¶ 6) All of the defendants in the two adversary proceedings, and no other parties, are appellants here.

On January 4, 1994, the defendants in the adversary proceedings filed petitions for involuntary relief under Chapter 7 against Brothers and Brocorp. On April 4, 1994, the Bankruptcy Court entered an order of relief against Brothers. After a hearing, on May 17, 1994, the Court entered a similar order against Brocorp. (Ex. 1 ¶ 3; Ex. 2 ¶ 4)

## C. *The Motion for Consolidation and the November 21, 1994 Hearing*

In July 1994, appellants moved for the substantive consolidation of all four bankruptcy proceedings. (Ex. 1) If the Brothers and Brocorp bankruptcy cases are substantively consolidated with the BCL and 599 cases, the two adversary proceedings may be rendered moot—the consolidation of the es-

tates of the companies that received the disputed payments with the estates of the companies that made them generally defeats fraudulent conveyance claims, because "the merger of the two estates [leaves] no party unjustly enriched and no creditors looking to an impoverished asset pool for payment." *In re Parkway Calabasas Ltd.*, 89 B.R. 832, 839 (Bankr.C.D.Cal.1988), *aff'd*, 949 F.2d 1058 (9th Cir.1991). Respondent, as trustee for BCL and 599, opposed the motion. (Ex. 2)

At a hearing conducted on November 21, 1994, the Bankruptcy Court, Cornelius Blackshear, J., heard testimony from four witnesses: Robert Salis, a certified public accountant who had reviewed the debtors' financial records, Albert and Maurice Mizrahi, and Nicholas Gallo, a credit manager for appellant Olympus.

Salis testified that few financial records were available for his review. The Mizrahis had produced virtually no records for Brothers and Brocorp, and had provided records for BCL and 599 dating back only to 1988. (Tr. at 23–24) In his review of the BCL and 599 documents, Salis discovered several intercompany loans among the four debtors, some of which apparently never were repaid. (*Id.* at 24–34)

On cross-examination, it was elicited that BCL and 599 filed separate tax returns and maintained separate bank accounts, financial statements, and payroll ledgers. (*Id.* at 46–48) Salis also conceded that the unpaid intercompany loans involved relatively small amounts of money. (*Id.* at 56–59)

Albert Mizrahi testified that the family was "running all four stores as one company," and that all four stores operated and advertised under the name "Brothers Cameras." (*Id.* at 78–79, 82) He explained that the Mizrahis treated the assets of the companies as a common fund. For example, whenever one company found itself illiquid and unable to pay its bills, it would draw funds from bank accounts maintained by the other three companies. (*Id.* at 91, 95) Similarly, when Brothers borrowed a substantial

---

**2.** Unless otherwise noted, all references to "Ex." are to exhibits in the Appellant's Designation of

Items to be Included in the Record on Appeal.

amount of money from Republic Bank, all four companies shared in the loan proceeds. (*Id.* at 94)

Generally, Albert Mizrahi testified, invoices for merchandise shipments would be paid by whichever company received the merchandise. However, on a few rare occasions, suppliers billed one company for goods shipped to one of the other three companies. (*Id.* at 103–08)

Maurice Mizrahi testified that the four debtors filed separate credit applications with each supplier, and that "[i]t was obvious [to the suppliers] there were four stores that existed." (*Id.* at 144)

Gallo testified that Olympus opened separate credit accounts for each of the four entities, but maintained common accounts for sales commission credits and cooperative advertising credits. (*Id.* at 152–57, 158–69) Although Olympus did not secure guarantees from any of the companies for payment of the debts of any of the other companies, Gallo claimed that Olympus based its credit decisions on the performance of the Brothers entities as a group. (*Id.* at 169–70, 182)

At the conclusion of Gallo's testimony, the movants rested. Before presenting any evidence, the trustee moved for a judgment on partial findings pursuant to Fed.R.Civ.P. 52(c), made applicable to the proceedings below by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.[3] Rule 52(c) provides:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.... Such a judgment shall be sup-

ported by findings of fact and conclusions of law....

Fed.R.Civ.P. 52(c).

The Court granted the trustee's motion. First, the Court found that the movants had failed to prove "that this company was a single economic unit." (Tr. at 198–99) In reaching that conclusion, the Court gave great weight to the admission of the Olympus representative that Olympus assigned a separate account number to each of the four stores. (*Id.* at 199) Second, the Court determined, with little discussion of the issue, that the commingling of assets identified by the movants did not justify consolidation. (*Id.*) Third, the Court found that the four companies were not held out to creditors as a single unit. (*Id.*) Finally, the Court declined to impose on the movants a sanction pursuant to Fed.R.Civ.P. 11, although the Court believed that this was a "perilously close" case for a sanction. (*Id.*)

Appellants filed a notice of appeal on December 29, 1994.

## II.

■ Jurisdiction for this appeal is premised on 28 U.S.C. § 158(a) (1988). This court reviews the Bankruptcy Court's legal conclusions *de novo*, but will set aside that Court's findings of fact only if clearly erroneous. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); Fed. R.Bankr.P. 8013.

The leading Second Circuit case on substantive consolidation is *In re Augie/Restivo Baking Co.*, 860 F.2d 515 (2d Cir.1988). Augie's Baking Company and Restivo Brothers Bakers originally were two unrelated family-run bakeries located in Central Islip and Queens, respectively. In 1983 and 1984, Union Savings Bank loaned Augie's over $2 million to finance expansion. The loan was

---

**3.** At the hearing, the parties and the Court described the trustee's motion as a motion to dismiss the motion for consolidation. In their brief, appellants describe the trustee's motion as a motion for involuntary dismissal pursuant to Fed. R.Civ.P. 41(b), citing language in Rule 41 that was deleted by amendment in 1991. (Appellants' Br. at 1) Equivalent language, authorizing the Court in a nonjury action to render judgment on

the merits for the defendant at the close of the plaintiff's case, now appears in Fed.R.Civ.P. 52(c). *See* Advisory Committee Note to Amendment of Rule 52, 134 F.R.D. 525, 690 (1991). The trustee's motion was a motion for a judgment on partial findings under Rule 52(c), not a motion for involuntary dismissal under Rule 41(b).

secured by a mortgage on Augie's real property.

In 1985, Restivo purchased all of the outstanding stock of Augie's in exchange for half of Restivo's outstanding stock. Restivo subsequently moved its operations to Augie's Central Islip facility and continued to do business under the new name Augie/Restivo Baking Company. However, Restivo never consummated a formal or de facto merger, never dissolved Augie's, and never transferred title to Augie's property to itself.

In 1985 and early 1986, Augie/Restivo borrowed nearly $3 million from Manufacturers Hanover Trust Company ("MHT"). That indebtedness was secured in part by a mortgage on the Central Islip plant. In 1986, both Augie's and Augie/Restivo were forced into bankruptcy. MHT moved for substantive consolidation to protect its security interest in Augie's Central Islip real property. Union opposed consolidation, seeking to protect its own security interest in that property. The Bankruptcy Court granted MHT's request for consolidation, and the District Court affirmed. *Id.* at 516–17.

■ The Second Circuit reversed. "The sole purpose of substantive consolidation," the Court held, "is to ensure the equitable treatment of all creditors." *Id.* at 518. Substantive consolidation is an equitable remedy that should be used sparingly, and only when the movant demonstrates: "(i) [that] creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit,' . . .; or (ii) [that] the affairs of the debtors are so entangled" that unraveling them would be impossible or prohibitively expensive. *Id.* at 518–19 (citation omitted).

In *Augie/Restivo,* both factors weighed against consolidation. First, the evidence showed that Union based its decision to extend credit to Augie's solely upon the financial condition of Augie's. Union was completely unaware of negotiations between Augie's and Restivo to combine operations. MHT also knew that it was dealing with separate entities, because it sought and received a separate guarantee from Augie's on Augie/Restivo's indebtedness. Second, the Court found that commingling had not

left the debtors' affairs in a state of "hopeless obscurity." Available records permitted the identification of separately owned real property, and the calculation of separate account balances for inventories, liabilities, and receivables. *Id.* at 519

The Court concluded that substantive consolidation was inappropriate because it would not benefit *all* creditors. Rather, consolidation of the Augie's and Restivo estates would have benefitted one creditor (MHT) at the expense of another (Union). *Id.* at 520–21.

### III.

■ Under *Augie/Restivo,* substantive consolidation is appropriate (1) if creditors did not rely on the separate existence of the debtors in extending credit, *or* (2) if the debtors' financial affairs are hopelessly entangled. *Id.* at 518. It is necessary to consider both of those "two critical factors." *Id.; see generally Federal Deposit Ins. Corp. v. Colonial Realty Co.,* 966 F.2d 57, 61 (2d Cir.1992) (substantive consolidation analysis under *Augie/Restivo* requires "a searching review of the record, on a case-by-case basis"); *In re Cooper,* 147 B.R. 678, 682 (Bankr. D.N.J.1992) (factors cited in *Augie/Restivo* are "signposts to assist the court's judgment"). Conceivably, substantive consolidation could be warranted on either ground; the Second Circuit's use of the conjunction "or" suggests that the two cited factors are alternatively sufficient criteria.

The Bankruptcy Court issued its ruling orally at the conclusion of the presentation of the movants' case. The full explanation for the Court's decision was as follows:

Number one, the movants failed to prove to me that this company was a single economic unit. The exhibits that were put into evidence today [belie] that theory. If you look at most of the records, of the evidence and the documents that were put into evidence, especially [the internal memorandum circulated at Olympus listing separate account numbers for the four stores], which [was] put in by one of the defendants to the adversary proceeding, that would indicate that that creditor did not treat the debtors as a single unit because

his company ascribed separate account numbers to that particular entity.

Two, intermingling or commingling of assets. While the movants have possibly done a job for the Trustees of Brothers and Brocorp by raising issues that could be the subject of a fraudulent conveyance action or possibly piercing the corporate veil, they have not prove[d] that the Debtors should be substantively consolidated. And I take that into consideration by taking a look at [six invoices for shipments that were billed to a store other than the store that received the merchandise shipped.]

And finally, as I indicated before, the creditors, these were not held out to creditors as a single entity, but rather such as a parent and its subsidiaries, and although Olympus may have treated some of the accounts as a single account, that was the doing of Olympus, but not the doing of the debtors.

(Tr. at 199–200)

A. *Creditors' Dealings with the Four Debtor Companies*

The Bankruptcy Court's finding that creditors did not treat the debtors as a single entity is not clearly erroneous. Appellants' arguments to the contrary betray a basic misunderstanding of the first *Augie/Restivo* test. Appellants repeatedly have stressed that the Mizrahi family treated the four debtors as "one company operating under four roofs." (Tr. at 5, 81, 93, 108; Appellants' Br. at 7) Most of the evidence they offered at the hearing shed light only on the conceptions of the family members who controlled the debtor corporations. But the first *Augie/Restivo* test must be applied from the creditors' perspective. The inquiry is whether *creditors* treated the debtors as a single entity, not whether the managers of the debtors themselves, or consumers, viewed the four stores as one enterprise.

As Judge Blackshear noted in his ruling, one creditor—appellant Olympus—assigned separate account numbers to each of the four companies. The internal memorandum cited by the Court (Ex. 61) was a tacit acknowledgment by Olympus that the company knew it was dealing with four entities. The Court's conclusion also was supported by the testimony of Olympus' own credit manager (1) that each entity was billed separately for merchandise shipments; (2) that the purchaser of each shipment paid its own bills, except on a few occasions; (3) that the four companies filed separate credit applications with Olympus; and (4) that none of the entities guaranteed payment of the indebtedness of any of the other entities. (Tr. at 173–74)

The Court's general reference to "records," "documents," and "evidence" supporting its conclusion as to the first *Augie/Restivo* factor was supplemented only by the specific reference to the Olympus internal memorandum. (*Id.* at 199) However, it is not difficult to identify the other evidence upon which the Court relied, because relatively little evidence was presented on the subject of creditors' knowledge, or lack thereof, that the four stores were operated by separate companies. That additional evidence also is consistent with the Court's conclusion that creditors treated the four entities as separate entities.

First, a credit manager employed by appellant Canon informed the Court by affidavit that each debtor filed a separate credit application with Canon and was assigned a separate account number. (Ex. 66, Rotolo Aff. ¶ 6) Second, the testimony of Albert Mizrahi revealed that Republic Bank, which loaned over $1 million to Brothers, sought separate payment guarantees from Brocorp, BCL, and 599 on the Brothers loan. (Tr. at 124) The Court in *Augie/Restivo* specifically held that a bank's insistence on separate loan guarantees by related corporations displays an understanding that the related corporations are separate entities. 860 F.2d at 519.

Little evidence was offered at the hearing as to any other creditor's dealings with the four debtors. Because the movants presented only meager evidence, and because much of the evidence offered tended to undercut their case, the Bankruptcy Court did not err in concluding that the movants had not established even a prima facie case for substantive consolidation under the first *Augie/Restivo* test.

## B. *Entanglement of the Debtors' Affairs*

■ As explained above, substantive consolidation is warranted if creditors did not rely on the separate existence of the debtors, *or* if the affairs of the debtors are hopelessly entangled. Both factors are part of the inquiry, and in an appropriate case, it might be sufficient to satisfy only one of the two tests. A finding that creditors knew they were dealing with separate entities does not necessarily preclude substantive consolidation on the ground that it is impossible or prohibitively expensive to unravel the debtors' commingled finances. Consolidation may still benefit all creditors under those circumstances because "the time and expense necessary even to attempt to unscramble [the debtors' separate finances may be] so substantial as to threaten the realization of any net assets for all the creditors." *Augie/Restivo,* 860 F.2d at 519 (citation omitted).

■ On a motion under Rule 52(c), the trial court acts as fact finder. Rule 52 thus directs trial courts to specify the findings of fact that support their conclusions of law. *Society for Good Will to Retarded Children, Inc. v. Cuomo,* 902 F.2d 1085, 1088 (2d Cir. 1990); *Inverness Corp. v. Whitehall Labs.,* 819 F.2d 48, 50 (2d Cir.1987) (specific findings of fact are necessary to afford the reviewing court "a clear understanding of the ground or basis of decision") (citation omitted).

■ The evidence cited by the Court in its short ruling supports the finding that creditors did not treat the stores as a single entity, but the ruling includes no discussion of evidence relevant to the application of the second *Augie/Restivo* test. The Court announced its ruling in three parts. The first and third parts—addressing whether the debtors were a "single economic entity" and whether the debtors were "held out to creditors as a single entity," respectively—seem to speak to the first *Augie/Restivo* test. The second part of the Court's ruling, addressing "intermingling or commingling of assets," might be understood as an attempt to apply the second *Augie/Restivo* test, but that part of the ruling was essentially conclusory. The Court simply stated that commingling would be relevant in a fraudulent conveyance ac-

tion, but that the movants had not proved that substantive consolidation was warranted. Because the Court did not say anything about the difficulty of disentangling the debtors' financial affairs, there is no finding of fact for me to review. It is not even clear that the Court considered the second *Augie/Restivo* test.

At the hearing, the movants relied heavily on the second *Augie/Restivo* test, repeatedly pointing out that there were virtually no records available for Brothers and Brocorp. (*See, e.g.,* Tr. at 197) The absence of records tends to establish that it would be difficult to distinguish the affairs of Brothers and Brocorp from the affairs of BCL and 599.

It may be that the Court considered the second *Augie/Restivo* factor and determined that disentanglement was not impossible or prohibitively expensive here, in view of: (1) the opinion of the accounting expert that it would not be impossible to reconstruct records for the debtors for certain years (*id.* at 54); (2) evidence that the debtors generally did keep records of intercompany loans and inventory transfers, even if the debts were not always repaid (*id.* at 55–59, 96); and (3) the sense that an accountant adequately could reconstruct financial records for Brothers and Brocorp by examining the records of BCL, 599, and creditors such as Republic Bank and appellants here (*see, e.g.,* Exs. 44–46). However, the Bankruptcy Court did not mention any of that evidence in its ruling, and the Court did not discuss the bearing of the absence of records for Brothers and Brocorp on the difficulty of disentangling the debtors' financial affairs. Because it is unclear whether the Court considered the second *Augie/Restivo* factor, and if so why it found that that factor did not weigh in favor of consolidation here, the decision of the Court must be vacated. *Tekkno Labs., Inc. v. Perales,* 933 F.2d 1093, 1097 (2d Cir.1991) ("we will normally vacate the order if the findings and the record are not sufficient to enable us to be sure of the basis of the decision below"); *In re Spangler,* 56 B.R. 990, 991 (D.Md.1986) ("If the findings of the Bankruptcy Court are made in conclusory fashion and the record below does not permit meaningful review, a remand by the district

court for further proceedings may be in order"). On remand, the Bankruptcy Court should make specific findings of facts as to "whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." *Augie/Restivo,* 860 F.2d at 518.

\* \* \*

For the reasons stated above, the decision of the Bankruptcy Court is vacated and the case is remanded for findings of fact on the second *Augie/Restivo* test.

SO ORDERED.