In re CRYSTAL APPAREL,
INC., et al., Debtors.

Gerald M. CHANEY and Michael B.
McLearn, Plaintiffs–Appellants,

v.

OFFICIAL COMMITTEE OF UNSE-
CURED CREDITORS OF CRYSTAL
APPAREL, INC., et al. and Unofficial
Committee of Institutional Lenders of
Crystal Apparel, Inc. et al., Defendants–
Appellees.

Nos. 96 Civ. 5215(SAS), 96 Civ. 5216(SAS).

United States District Court,
S.D. New York.

Feb. 12, 1997.

Shalom Jacob, Shereff, Friedman, Hoffman & Goodman, New York City, for Plaintiffs–Appellants.

Theodore Gewertz, Wachtell, Lipton, Rosen & Katz, Thomas J. Moloney, Cleary, Gottlieb, Steen & Hamilton, New York City, for Appellees.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs Gerald M. Chaney and Michael B. McLearn appeal pursuant to 28 U.S.C. § 158 from a Decision and Order of the United States Bankruptcy Court for the Southern District of New York granting defendants summary judgment in an action for payment of plaintiffs' employment agreements as priority administrative expenses. For the reasons set forth below, the Decision and Order of the Bankruptcy Court is vacated and the case is remanded for further consideration in light of this Opinion.

### Procedural Background

By motions dated June 29, and July 5, 1995, Chaney and McLearn moved the Bankruptcy Court for an order allowing and directing payment in the amounts of $729,-567.66 and $675,238.69, respectively. Plaintiffs alleged these payments were due under their employment agreements and were priority administrative expenses of the Crystal Apparel, Inc. ("Crystal") Chapter 11 estate. Defendants opposed the motion, and the Bankruptcy Court granted defendants summary judgment on March 29, 1996. Plaintiffs filed this appeal on July 12, 1996. Oral argument was held on October 24, 1996. On December 4, 1996, the parties agreed to mediate their dispute, but on January 27, 1997, the Court was informed that the mediator's best efforts had failed to produce an out-of-court settlement.

### Applicable Standard of Review

In bankruptcy cases, a District Court sits as an appellate court and applies dual standards of review to the Bankruptcy Court's findings. The Bankruptcy Court's findings of fact may not be set aside unless clearly erroneous. Fed.R.Bankr.P. 8013. *See In re Artha Management, Inc.,* 91 F.3d 326, 328 (2d Cir.1996). Questions of law, however, are subject to *de novo* review. *See In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 89 (2d Cir.1992) (citing *Truck Drivers Local 807 v. Carey Transp., Inc.,* 816 F.2d 82, 88 (2d Cir.1987)).

### Legal Standard for Summary Judgment

Because the Bankruptcy Court may have applied an incorrect legal standard in grant-

ing defendants summary judgment, I will restate the correct legal standard here. Under Rule 56 of the Federal Rules of Civil Procedure and applicable case law,[1] a party is entitled to summary judgment when there is "no genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. See Fed. R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of a material factual dispute rests on the moving party. *See Gallo v. Prudential Residential Svcs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Once that burden is met, the non-moving party must present "significant probative supporting evidence" that a factual dispute exists. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

The court's role is not to try issues of fact, but rather to determine whether issues exist to be tried. *See Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989); *Donahue v. Windsor Locks Bd. of Fire Com'rs*, 834 F.2d 54, 58 (2d Cir.1987). All ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Donahue*, 834 F.2d at 57, 60. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

### Factual Background

Crystal Apparel, Inc. ("Crystal") became a publicly-owned company after it was spun off by General Mills, Inc. in November of 1985. In 1986, Crystal entered into an employment agreement with more than a dozen of its senior officers, including plaintiffs, which remained in effect during the following eight years. Crystal renewed Chaney's employment contract six times between 1986 and 1994 (twice by Letter Agreement), and renewed McLearn's employment contract five times between 1986 and 1994 (also twice by Letter Agreement). See Amended Joint Brief of Appellants ("Appellants' Brief") at 4–6.

Plaintiffs were employed as high-level executives by Crystal's predecessor-in-interest, General Mills Fashion Group ("GMFG"). The employment contracts between GMFG and plaintiffs included a provision in which plaintiffs would receive a substantial lump sum payment if they lost their jobs in the event of a "change of control".[2] From 1986 through 1994, plaintiffs were employed by Crystal and continued to enjoy the same guarantee of a lump sum payment upon change of control each time their employment contracts were renewed. *See* Appellants' Brief at 3–6.

On January 21, 1994, Crystal filed for reorganization under Chapter 11. On January 24, 1994, the Bankruptcy Court authorized the debtors, *inter alia*, "to continue to fund all ... employee benefits plans, policies and practices and procedures in respect thereof in the ordinary course of business, to the extent that such plans, policies programs and procedures were in effect as of the [petition date]." *See* Appellants' Brief at 8; Record on Appeal ("R.") at 2471.

In response to what was perceived to be a serious management crisis, the debtor requested the Compensation Division of KPMG Peat Marwick ("Peat Marwick")[3] to undertake an analysis of Crystal's compensation structure to determine whether it was adequate to encourage "key employees" to remain with Crystal. In a report dated March 11, 1994, Peat Marwick concluded that Crystal risked losing its most valuable personnel because Crystal's reorganization attempts had "created an uncertain environment" and

---

**1.** Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings before a Bankruptcy Court. *See* Fed.R.Bankr.P. 7056.

**2.** Both plaintiffs were guaranteed a large lump sum payment if they lost their jobs as a result of a hostile take-over. This kind of employment contract, commonly referred to as a "golden parachute" in the lexicon of corporate executives and lawyers alike, serves both to deter hostile take-over attempts and to retain key managers.

**3.** Peat Marwick was the debtor's court-approved Chapter 11 accountant.

also because the total compensation Crystal paid its employees was "significantly below industry practices." *See* R. at 1525, 1527–28. Specifically, Peat Marwick found that Crystal's total compensation of its top five officers, including plaintiffs, was 52% below the "industry average". *See* R. at 1527, 2063. The Peat Marwick report warned Crystal that its "best people are vulnerable to recruitment" and that Crystal would suffer severe consequences if it lost any of its "key employees." *See* R. at 1530. As a result of the Peat Marwick Report, Crystal entered into new employment agreements with upper level officers of the corporation, including plaintiffs.[4] Crystal did not seek Court approval for these employment contracts, which include a provision for a lump sum payment upon a change of control.

### Discussion

I.   11 U.S.C. Section 363(c)(1)

■   The Bankruptcy Code is designed to allow a trustee or debtor-in-possession the flexibility to engage in ordinary transactions without unneeded oversight by creditors or the court, while at the same time giving creditors an opportunity to contest those transactions that are not ordinary. *See In re Roth American, Inc.,* 975 F.2d 949, 952 (3d Cir.1992). This balance between allowing businesses to continue their daily operations on the one hand, and protecting creditors from squandering the estate's assets on the other, is reflected in Section 363(c)(1) of the Bankruptcy Code:

> If the business of the debtor is authorized to be operated under ... this title and unless the court orders otherwise, the trustee may enter into transactions ... **in the ordinary course of business,** without *notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.*

11 U.S.C. § 363(c)(1) (emphasis added).

Neither the Bankruptcy Code nor its legislative history provides guidance as to whether a particular transaction was conducted "in the ordinary course of business". However, this Court and others have applied a two-step "horizontal and vertical test" that considers the reasonableness of the transaction from an industry-wide perspective and from the viewpoint of a creditor:

> The inquiry deemed horizontal is whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry. The inquiry deemed vertical (more appropriately characterized as the creditor's expectation test) analyzes the transactions 'from the vantage point of a hypothetical creditor and [the inquiry is] whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit.'

*In re Roth,* 975 F.2d 949, 953 (3d Cir.1992) (citations omitted). *See also In re Dant & Russell, Inc.,* 853 F.2d 700, 704–05 (9th Cir. 1988) (applying the same two-part test to determine whether a transaction was within the "ordinary course of business" under § 363(c)(1)); *In re Drexel Burnham Lambert Group, Inc.,* 157 B.R. 532, 537 (S.D.N.Y. 1993) (same). My review of the case law interpreting § 363(c)(1) fails to reveal any other accepted method of determining whether a transaction took place "in the ordinary course of business".

II.   The Bankruptcy Court's Decision and Order

The Bankruptcy Court's March 29, 1996 Order contains no explanation of the reasoning behind the Court's grant of summary judgment to defendants. *See* R. at 2466–2467. However, Judge Beatty[5] did explain her reasoning during oral argument on January 24, 1996, and I base my analysis of the March 29 Order on those statements.

First, Judge Beatty distinguished between "golden parachutes", which she defined as lump sum payments paid when an employee

---

**4.** Plaintiffs' employment agreements were renewed in Letter Agreements, dated March 28, 1994. *These Agreements extended the terms of* plaintiffs' prior employment contracts through May 31, 1995 with only minor alterations. *See* Appellants' Brief at 10.

**5.** Judge Prudence Abram resumed the use of her maiden name, Prudence Carter Beatty, on February 3, 1997.

is fired after a hostile take-over has taken place, and "severance pay", which she defined as a lump sum paid after the employee is terminated in cases not involving a change in control of the corporation. *See* R. at 2358–59. Judge Beatty then determined that plaintiffs' employment contracts were "golden parachutes" in part because of the employment contract's reference to § 280G(b)(2) of the Internal Revenue Code.[6] Finally, Judge Beatty concluded: "I would be prepared to hold that any golden parachute is not in the ordinary course of business and requires court approval." R. at 2358.

## III. Analysis

### A. The Distinction Between Severance Payments and Golden Parachutes

■ "Golden parachutes" seem to generate great controversy in and out of the courtroom. Since the beginning of this decade, allegedly excessive executive compensation arrangements have received substantial attention from both the academic community and the media. Many scholarly commentators have criticized the seemingly astronomical compensation packages of the most highly paid corporate executives.[7] Despite this nation's general adherence to the principles of capitalism and meritocracy, there is something disturbing about an economic system in which the discrepancy between the highest-paid and lowest-paid employees of the same company is so vast. Yet courts must exercise great deference in reviewing a corporation's decision to pay its employees. *See, e.g.,* Ronald J. Gilson, *Executive Compensation and Corporate Governance: An Academic Perspective,* 792 PLI/Corp. 647, 673 (1992) ("Courts are the least suitable monitor of compensation decisions.... [B]ecause

these are 'local' decisions that not only lack a determinative framework, but depend on the peculiarities of particular companies and particular industries, it is difficult to imagine how a court bent on monitoring compensation decisions would proceed").

. Golden parachute employment contracts executed by an insolvent corporation might seem problematic at first blush because of the potential differences between the interests of the directors and creditors of a debtor-in-possession. Yet the Bankruptcy Court's decisions that (1) "golden parachutes" are distinct from "severance pay" and (2) "golden parachutes" may never fall within the definition of a transaction conducted "in the ordinary course of business" pursuant to § 363(c) are both misguided.

■ A "golden parachute" employment contract is not legally distinguishable from a severance payment simply because it pays a lump sum after a hostile take-over and the termination of the employee. The contract, if originally executed by the corporation, remains an obligation of that corporation, irrespective of who may own a controlling share. Nor does the fact that the employment agreements attempt to avoid the Tax Code's definition of "golden parachutes" by setting plaintiffs' payment at 2.99 times their base salary provide a valid basis for treating those agreements differently than other types of severance payments. Even if plaintiffs' lump-sum payments had been over three times their base salary—thereby qualifying as "golden parachutes" for tax purposes—this fact, standing alone, would not provide a basis for determining that their contracts were not executed in the "ordinary course of business." There is nothing unusual or pernicious about a compensation arrangement

---

**6.** Section 280G(b)(2)(A) defines the term "golden parachute payment" for purposes of the Tax Code as any lump-sum severance payment which is three times or more the amount of the employee's base salary. Such a classification results in a higher tax rate than that applied to ordinary income. It appears that plaintiffs' lump sum payments were designed to avoid tax classification as "golden parachute payments" by setting the value of the payments at 2.99 times the amount of their base salary.

**7.** *See, e.g.,* Mark A. Heyl, *Golden Parachutes: Does the Business Judgment Rule Simply Perpetuate the Problem?,* 31 Santa Clara L.Rev. 739, 742–43 (1991); Kenneth C. Johnson, *Golden Parachutes and the Business Judgment Rule: Toward a Proper Standard of Review,* 94 Yale L.J. 909, 909 (1985); Edwin T. Hood & John J. Benge, *Golden Parachute Agreements: Reasonable Compensation or Disguised Bribery?,* 53 UMKCL.Rev. 199, 202–03 (1985); David V. Maurer, *Golden Parachutes—Executive Compensation or Executive Overreaching?,* 9 J.Corp.L. 346, 346 (1984).

that seeks to minimize the beneficiary's tax liability. "Golden parachutes" are merely a type of severance payment that is generally received by top corporate managers. The Bankruptcy Court therefore erred in deciding to treat "golden parachutes" differently than "severance payments" as a matter of law for purposes of determining whether plaintiffs' employment contracts fell within the safe harbor of § 363(c).

■ Also, the Bankruptcy Court's determination that "golden parachutes" may never constitute a transaction undertaken "in the ordinary course of business" for purposes of § 363(c) as a matter of law lacks any legal basis. My review of the Bankruptcy Code and relevant case law has revealed no statute, rule or judicial opinion supporting this proposition, and none has been brought to my attention by the parties or the Bankruptcy Court itself. Additionally, the facts of this case—seen in the light most favorable to plaintiffs as is appropriate on motion for summary judgment—indicate that "golden parachute" employment contracts had been Crystal's ordinary practice with regard to employing plaintiffs since 1986. Furthermore, the Peat Marwick report indicated that "golden parachutes" for top executives were an industry-wide norm that Crystal should attempt to emulate. *See* R. at 1541. These facts seem to indicate that plaintiffs' employment contracts were "ordinary" with regard to both Crystal and similarly situated corporations. It is unclear from the record whether the Bankruptcy Court overlooked these facts and their legal significance with regard to § 363(c).[8]

## IV. Remand

■ The Bankruptcy Court relied on erroneous legal conclusions in deciding defendants' motion for summary judgment. Specifically, the Court classified plaintiffs' employment contracts as "golden parachutes" rather than "severance payments" and held that "golden parachutes" are categorically beyond the scope of § 363(c). In doing so, the Court did not apply the two-step test discussed above to determine

whether a transaction was conducted "in the ordinary course of business". It also appears that, in deciding whether plaintiffs' employment contracts were conducted within the "ordinary course of business", the Court overlooked the facts discussed above, and made findings of fact adverse to plaintiffs rather than resolving all ambiguities in their favor as is required on motion for summary judgment. Finally, I note that the Bankruptcy Court's decision did not address related issues raised on appeal, such as (1) whether, under § 365 of the Bankruptcy Code, Crystal remained liable for failure to make payments under plaintiffs' contracts after those contracts were assigned to Phillips–Van Heusen Corporation, and (2) whether plaintiffs' claims are entitled to administrative priority as severance payments.

■ Because it is unclear from the transcript of the Bankruptcy Court's decision, and from the Order itself, to what extent the Bankruptcy Court relied on erroneous standards of law in deciding defendants' motion for summary judgment, the decision of the Court must be vacated. *See Tekkno Laboratories v. Perales,* 933 F.2d 1093, 1097 (2d Cir.1991) ("[W]e will normally vacate the order if the findings and the record are not sufficient to enable us to be sure of the basis of the decision below"); *In re 599 Consumer Electronics. Inc.,* 195 B.R. 244, 250–51 (S.D.N.Y.1996) (vacating Bankruptcy Court order where basis of the ruling is unclear). On remand, the Court should adhere to the two-step test discussed above to determine whether plaintiffs' contracts were executed "in the ordinary course of business".

## Conclusion

For the reasons set forth above, the Bankruptcy Court's March 29, 1996 Order granting defendants' summary judgment is vacated and the case is remanded for further consideration in light of this Opinion.

So Ordered.

---

**8.** Because, as noted above, Judge Beatty's decision was only summarily explained after oral argument, the grounds for the March 29 Order are not entirely clear.